Andrews *v.* Andrews.

---

## ANDREWS *v.* ANDREWS ET AL.

[No. 4,680.   Filed May 22, 1903.]

LIFE ESTATES.—*Royalties from Oil Wells.*—*Gas and Oil Lease.*—Where testator leased lands for oil, and two oil-wells were in operation at the time of his death, the devisee of the life estate is entitled to the royalties accruing from wells drilled under the provisions of the lease, after the death of testator, as well as from those drilled prior to the death of testator.

From Huntington Circuit Court; *Levi Mock,* Special Judge.

Action by Ensley G. Andrews against Amy A. Andrews and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*C. W. Watkins, H. C. Morgan, M. L. Spencer, W. A. Branyan* and *H. B. Spencer*, for appellant.

*U. S. Lesh, Eben Lesh, J. B. Kenner* and *Branyan & Feightner*, for appellees.

ROBINSON, J.—Transferred from the Supreme Court under the act of March 12, 1901.

In 1889 Calvin Andrews executed his will, devising to appellee Amy Ann Andrews, his wife, a life estate in certain lands, with remainder over to appellant and others. In 1895 Calvin Andrews executed a lease on the lands, by which, for a consideration, he hereby "grants unto" the lessee "all the oil and gas in and under" the lands mentioned, "with the right to enter thereon at all times for the purpose of drilling and operating for oil or gas," to erect buildings, lay pipes, etc., the lessor to have one-eighth of all oil produced and saved; in case no well was completed within ninety days from the date of the instrument, then the grant to be null and void, unless the grantee or lessee shall pay at the rate of a named sum annually for each year completion is delayed. Andrews died in 1898, and at that time two oil-wells had been drilled by the assignee of the lessee and were in operation. Since his death four additional wells have been drilled, and one-eighth of the oil from all the wells has been delivered to appellee. Appellant, as one of the remaindermen, sues for his share of the royalties received by appellee.

Because of the peculiar character of oil and gas, decisions in mining cases concerning minerals that have a fixed *situs* are not controlling in contracts concerning them without some modification. The owner of land owns absolutely the coal lying beneath the surface. And while a landowner has certain property rights in gas and oil in the ground, because while in the particular ground they are a part of the realty, yet he can not be said to be the absolute owner until he has reduced them to possession. His property in them is lost if they escape and go into other land,

and they may become the property of an adjoining land-owner by being reduced to possession by him through a well drilled on his own land.   See *Manufacturers Gas, etc., Co.* v. *Indiana Nat. Gas, etc., Co.,* 155 Ind. 461, 50 L. R. A. 768; *Richmond Nat. Gas Co.* v. *Enterprise Nat. Gas Co., post,* 222; *Brown* v. *Spilman,* 155 U. S. 665, 39 L. Ed. 304, 15 Sup. Ct. 245.

A tenant for life, being entitled to the profit of the land, is entitled to the royalties from the wells that were opened and in operation when the life estate commenced.   *Westmoreland Coal Co.'s Appeal,* 85 Pa. St. 344; *Sayers* v. *Hoskinson,* 110 Pa. St. 473; *Koen* v. *Bartlett,* 41 W. Va. 559, 23 S. E. 664, 56 Am. St. 884, 31 L. R. A. 128; *Lynn's Appeal,* 31 Pa. St. 44, 72 Am. Dec. 721; *Freer* v. *Stotenbur,* 36 Barb. 641; Bryan, Petroleum & Natural Gas, 41 *et seq.;* Rogers, Mines & Quarries, 257; *Gaines* v. *Green, etc., Mining Co.,* 33 N. J. Eq. 603; *Moore* v. *Rollins,* 45 Me. 493; *Clift* v. *Clift,* 87 Tenn. 17, 9 S. W. 360; *Lenfers* v. *Henke,* 73 Ill. 405, 24 Am. Rep. 263; *Crouch* v. *Puryear,* 1 Rand. (Va.) 258, 10 Am. Dec. 528; Barringer & Adams, Mines & Mining, 8; *Hendrix* v. *McBeth,* 61 Ind. 473, 28 Am. Rep. 680.

In *Hendrix* v. *McBeth, supra,* a decedent in his lifetime leased certain lands for mining coal, and the lessee sunk a shaft and began the mining of coal.   At his death, testate, his widow took, under the statute, one-third of the land for life.   The executor, empowered to collect the rents and profits of the land for certain purposes, had received two-thirds of the royalties, and sued the lessees and widow for the remaining one-third.   It was held that the widow was entitled to the one-third of the royalties.   And it is the general common law rule that where there have been no operations for oil commenced on the land before the estate for life accrued, the life tenant has no right to operate for oil, nor can he give such a right to any lessee from him. *Appeal of Sloughton,* 88 Pa. St. 198; *Westmoreland Coal*

*Co.'s Appeal, supra;* *Blakley* v. *Marshall,* 174 Pa. St. 425, 34 Atl. 564; *Marshall* v. *Mellon,* 179 Pa. St. 371, 36 Atl. 201, 35 L. R. A. 816, 57 Am. St. 601.

Appellant's counsel rely chiefly upon the two cases last cited. In neither of these cases had there been any operations for oil prior to the beginning of the life estate. In *Blakley* v. *Marshall, supra,* the lease was made by lessors who were life tenants, and also as trustee for those in remainder; that is, all the interests concurred in making the lease. It was held that the life tenants were entitled to the interest on the proceeds from royalties during their joint lives and the life of the survivor, and at the death of the latter the principal was payable to the remaindermen. In *Marshall* v. *Mellon, supra,* this doctrine was approved, and it was held that the life tenant could not enforce the terms of a lease executed by him for gas and oil purposes.

While a tenant for life, subject to waste, can not open a new mine, yet he may open the earth in new places to reach a mine which had been worked before the beginning of the life estate. Sinking a new pit on the same vein is not necessarily the opening of a new mine. *Clavering* v. *Clavering,* 2 P. Wms. 388; *Bagot* v. *Bagot,* 32 Beav. 509; *Elias* v. *Snowdon, etc., Co.,* L. R. 4 App. Cas. 454, 465. The reason underlying this doctrine is that where the owner of the fee in his lifetime has opened and worked a mine, he has made it a part of the profits of the land. *Viner* v. *Vaughan,* 2 Beav. 466. However, it seems to be immaterial whether the mine opened by the owner of the fee produced a profit or not. If the owner of the fee in his lifetime has opened the mine, even though he may have discontinued working upon it for a number of years prior to his death, the life tenant has a right to use the mine for his own profit. *Elias* v. *Griffith,* L. R. 8 Ch. Div. 521. But the distinction is recognized between a discontinued working of a mine consisting of a mere cessation of work, and an abandonment with an executed intention to devote

the land to some other use.   In the former case the life
tenant's right to operate the mine is not defeated, while in
the latter case it is.     Barringer & Adams, Mines & Mining,
8, and cases cited.

In *Billings* v. *Taylor,* 10 Pick. 460, 20 Am. Dec. 533,
the court said: "Whatever doubts may have been formerly
entertained, it seems now to be well settled, that a widow is
entitled to dower in such mines and quarries, as were actu-
ally opened and used during the lifetime of the husband,
and it makes no difference whether the husband continued
to work them to the period of his death, or whether they
have been continued since his death by the heir or his
assignee."   And in *Neel* v. *Neel,* 7 Harr. (Pa.) 323, it is
said:   "It seems in this case that the author of the gift had
sometimes sold coal out of the pits, but I do not conceive
this to be material.   It is sufficient that he opened them
and derived any profit from them, even if it were only fire
bote   *   *   *.   And the decisions refer to coal mines,
*   *   *   iron mines,   *   *   *   and the tenant for life
may work them, even though the working of them may
have been discontinued before the death of him through
whom the estate comes   *   *   *.   And if necessary to the
proper working of them, to make new openings in the
ground."   See also *Coates* v. *Cheever,* 1 Cow. 460.

In the case at bar the lease was executed before the begin-
ning of the life estate, and gave the lessee the right to
operate for oil upon the land, and to take all the oil found
upon the payment of a certain royalty.   If a well was
not commenced within a certain time, the lease was void,
unless the lessee should pay a certain annual sum during
the delay.   The instrument was not acknowledged, and
from its whole tenor does not attempt to do more than lease
the lands for gas and oil purposes.   The validity of the
lease and the lessee's right to operate wells are not ques-
tioned.   The lease is valid and was in force at the begin-

ning of the life estate, and under its provisions the lessee may open and operate such wells as he chooses.

If no wells had been drilled, and the lessees had paid the stipulated annual rental to the testator up to the time of his death we think it clear that this rental would be payable to the life tenant during the delay in beginning operations. And if the whole territory had been developed and the wells in operation under the lease prior to the time the life estate accrued, the royalty, as we have seen, would be payable to the life tenant. The life tenant's right to the rents and profits from open wells rests upon the lawfulness of the severance and conversion of the oil into personalty under the lease. Although the additional wells had not been drilled, yet the right to drill them existed at the beginning of the life estate. The life tenant has not attempted to grant any new right. The additional wells are not opened by any authority from her. They may be opened by virtue of the lease without reference to her wishes in the matter. The opening of new wells under the lease is practically the act of the testator. He authorized the act by the lease, and in contemplation of law the wells may be treated as already opened when the life estate accrued.

In *Koen* v. *Bartlett,* 41 W. Va. 559, 23 S. E. 664, 31 L. R. A. 128, 56 Am. St. 884, the court said: "A mine lawfully leased to be opened is an 'open mine,' within the reason of the rule as laid down in these cases; and when lawfully opened and worked, as in this case, during the time that the freehold estate of the life tenant continues, the profits issuing therefrom, thus lawfully severed and produced, belong of right to him; for the term 'profit' in law, comprehends the produce of the soil, whether it arises above or below the surface, including product of mines, as well as the herbage growing on the surface." To the same effect is *Priddy* v. *Griffith,* 150 Ill. 560, 37 N. E. 999, 41 Am. St. 397.

Judgment affirmed.