CHEROKEE CONSTRUCTION COMPANY *v.* HARRIS.

Opinion delivered November 8, 1909.

HOMESTEAD—RIGHT OF WIDOW AND MINOR HEIRS TO OPEN MINES.—During the continuance of the homestead estate of the widow and minor children, they have not the right, as incident to such estate, to open new mines on the land and to mine and sell coal therefrom, or to lease the same to others for that purpose.

Appeal from Sebastian Chancery Court; *J. Virgil Bourland,* Chancellor; reversed.

*Ira D. Oglesby,* for appellant.

An action of waste can be sustained against a widow owning dower interest in her husband's land for waste committed by her. 20 Mass. 203; 12 Ga. 235; 112 Ia. 210. So she may be enjoined from committing waste. 85 Ia. 78; 53 Ind. 267; 110 Penn. 473; 16 N. J. Eq. 248; 33 *Id.* 603; 39 Md. 33; 2 Hill 157; 49 Md. 549; 33 Am. St. R. 280; 66 *Id.* 370; 41 W. Va. 559; 56 Am. R. 884; 64 *Id.* 891; 179 Pa. St. 371; 43 W. Va. 562.

*T. B. Pryor,* for appellee.

Art. 9, sec. 6, Const. 1874, is to be liberally construed. 54 Ark. 11; 65 Ark. 251; 70 Ark. 483; 71 Ark. 594; 77 Ark. 186. The homestead estate is superior to that of dower. 47 Ark. 455. A widow cannot sell her dower and deliver possession while the right of homestead exists. 58 Ark. 302. The probate court cannot order the land sold until the homestead rights of both the widow and children have terminated. 50 Ark. 329. A vein of coal beneath the surface of a homestead is a part thereof, and is protected to the same extent. 70 Ark. 318.

FRAUENTHAL, J. The appellant, who was the plaintiff below, instituted this suit in the chancery court against the appellees, seeking to have certain lands partitioned and to enjoin the defendants from committing waste by mining and removing from the lands the coal underlying the same. It alleged that one Matthew Pew was the owner of the lands in his lifetime, and that plaintiff became the owner of an one-half interest in the lands by purchase from the adult heirs of said Pew.

The defendants alleged that the land was the homestead of said Pew, and that it was occupied as such homestead by his widow, who was one of the defendants, and his minor children; that the widow for herself and minor children made a lease to the other defendants of the right to take and mine the coal underlying the land; and that by virtue of their homestead estate in the land they had the right to mine said coal.

It is conceded that the facts developed in the case are as follows: The land in controversy was at the death of Matthew Pew his homestead, and was occupied as such. At the time of his death he left surviving him his widow, defendant herein, who after his death married W. B. Thompson, with whom she now resides on said land. The deceased, Matthew Pew, at the time of his death had six adult and four minor children.

That plaintiff is owner of a half interest in said land by purchase from the adult children of Matthew Pew, as set out in the complaint; that each of the four minor children own an undivided one-tenth interest in the lands, and they now reside on it with their mother, Mrs. W. B. Thompson, one of the defendants. At the time of the death of Matthew Pew it was used and occupied as a farm for farming purposes only, and was so used at the time of the marriage of his widow with Thompson, and was so used thereafter, and is still so used; that at the time of the death of Matthew Pew no coal was mined, or had ever been mined, from said land, and no opening of any kind whatsoever made for said purpose. That in the year 1907 defendant Mrs. Thompson, for herself and minor children, made a lease to the defendants herein, Harris, Williams and Welchel, of the right to take and mine the coal from under said land, for which they were to pay a royalty of ten cents per ton, which produces $75 per acre, and they are now, and have been since the execution of said lease, mining coal from said land, and have sunk a slope or shaft on same for this purpose; that all the royalty under said lease is being paid to Mrs. Thompson for herself and children; that the youngest child is about four years of age, and the oldest of the minors nine years old; that the value of said land including the coal is $75 per acre, and its value after the coal is removed $10 per acre; that rental or income of the land, if used only for farming purposes, would not exceed $100 a year; that under the terms of said lease a larger part, if not all, the coal under said land will be mined out before the youngest child reaches lawful age.

The chancery court denied the plaintiff any relief; holding that the widow and minor children had the right to open new coal mines and to mine and remove the coal underlying the land; and dismissed the complaint. From that decree the plaintiff presents this appeal.

Upon the fact being developed that the land was the homestead of Matthew Pew at the date of his death, and was at the institution of this suit occupied by his widow and minor children, claiming same as a homestead, the plaintiff did not press that portion of his complaint which sought to partition the land, but

did seek the relief, and does now seek only the relief, of enjoining the mining and removal of the coal from under said lands.

The question involved in this case is whether, during the continuance of the homestead estate of the widow and minor children, they have the right, as against the adult children or their grantee, to open on the land coal mines where none had been opened during the lifetime of the husband and parent, and to take and mine the coal therefrom solely for the purpose of sale.

The defendants assert this right by virtue of the homestead provided for the widow and minor children by the Constitution. Article 9, section 6, of the Constitution provides: "If the owner of a homestead die, leaving a widow but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rent and profits shall vest in her during her natural life, provided, that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits until each of them arrives at twenty-one years of age—each child's right to cease at twenty-one years of age—and the shares to go to the younger children, and then all to go to the widow, and provided that said widow or child may reside on the homestead or not; and, in case of the death of the widow, all of said homestead shall be vested in the minor children of the testator or intestate."

The chief purpose of this constitutional provision was to secure to the widow and minor children a fixed home during the life of the widow or minority of the children. To secure this object, it was made exempt from sale; so that it can not be sold to pay the decedent's debts, and it cannot be partitioned, either in kind or for sale. *Trotter* v. *Trotter,* 31 Ark. 145; *Kirksey* v. *Cole,* 47 Ark. 504; *McCloy* v. *Arnett,* 47 Ark. 445; *Nichols* v. *Shearon,* 49 Ark. 75; *Stayton* v. *Halpern,* 50 Ark. 329; *Burgett* v. *Apperson,* 52 Ark. 213; *Bond* v. *Montgomery,* 56 Ark. 563; *Sparkman* v. *Roberts,* 61 Ark. 26.

It protects the occupant in the possession of the land, and holds it together as a place of residence and a home preserved against sale or partition. It cannot be sold or alienated by the widow; by the act of sale she abandons it as a homestead. *Garibaldi* v. *Jones,* 48 Ark. 230; *Sansom* v. *Harrell,* 55 Ark. 572.

But the homestead law does not create any estate greater or any right more enlarged than that of the occupancy of the land and the right to the enjoyment of the rents and profits therefrom during the life of the widow or minority of the children.

In the case of *Kessinger* v. *Wilson,* 53 Ark. 400, it is held that when one dies seized of a homestead his minor children have two separate and distinct estates in the land, the estate of homestead and of inheritance. These two do not merge; but the right to the enjoyment and possession of the one follows the other, and the right by inheritance cannot be impaired by the right of enjoyment of the homestead during their minority.

After the estate of homestead has terminated by the death of the widow and the majority of the children, the land is still liable for the debts of the parent. *McAndrew* v. *Hollingsworth,* 72 Ark. 446. And the homestead cannot be devised so as to free it from those debts after the termination of the homestead estate. *Winter* v. *Davis,* 51 Ark. 335. And, subject to the homestead estate, the heirs of the decedent have an estate of inheritance in the land. As affecting the rights of the heirs, therefore, the homestead estate is one for life or for years. "The right of homestead is purely the creation of statutes, which have no extraterritorial force. It is generally spoken of as an estate in land and created as an estate for life." 1 Washburn on Real Prop. § 540. Now, a tenant for life or for years must not commit waste. Anything that is done or permitted to be done that essentially injures or impairs the estate of the remainderman or reversioner is waste. It is the duty of the life tenant or tenant for years to protect the land from injury to the freehold. 1 Tiedeman on Real Property, § 75; 1 Washburn on Real Property, § 270; 1 Lomax, Dig. 594; 1 White & T. Lead. Cases Eq. 1011; 30 Am. & Eng. Enc. Law (2nd Ed.) 236.

In the case of *McLeod* v. *Dial,* 63 Ark. 10, it is held that "a life tenant has no right to cut trees growing upon land or to allow them to be cut, except so far as it might be necessary to the proper enjoyment of his life estate in conformity with good husbandry, so as not to materially lessen the value of the inheritance." *Modlin* v. *Kennedy,* 53 Ind. 267.

In the case of *Smith* v. *Smith,* 31 S. E. 135 (Ga.) it was held that a widow who has taken a homestead in her deceased husband's land cannot, as against the rights of those entitled to the property in reversion after the homestead estate shall have expired, make a sale of the standing timber on the land when same will injure the value of the freehold and is not essential to the legitimate use of the property for homestead purposes. *Parker* v. *Chambliss,* 12 Ga. 235.

It is uniformly held that it is waste to open lands to search for new mines. If there are mines already opened on the land when the tenant takes the estate, it is not waste to continue to work them. The offense of waste consists in the first penetration and opening of the soil. And so it has been held that a mine which was opened at the vesting of the life estate or estate for years may be worked by the tenant, even to exhaustion. 1 Lomax, Dig. 54; 1 Washburn on Real Property, § 280; *Crouch* v. *Puryear,* 1 Rand. (Va.) 258. But tenants for life or for years are guilty of waste in opening and working new mines and which were unopened at the time of the vesting of the estate. 20 Am. & Eng. Enc. Law, 769; 1 Washburn on Real Property, § 280; 16 Cyc. 625. They may use the premises as they may see fit, provided it does not injure the inheritance. They may work old mines already opened when they obtained the estate; but they cannot open new mines. Tiedeman on Real Property (2d Ed.), § 75; *Hook* v. *Garfield Coal Co.,* 112 Iowa 210; *Gerkins* v. *Ky. Salt Co.,* 66 Am. St. Rep. 370; *Koen* v. *Bartlett,* 41 W. Va. 559; *Williamson* v. *Jones,* 43 W. Va. 562; *People's Gas Co.* v. *Tyner,* 131 Ind. 227.

It follows that the life tenant has the right to use and enjoy the premises as he may see fit, provided he commits no injury to the inheritance. He takes the land in the condition in which it was when the estate vested in him, and he is entitled to all the rents and profits that then issued therefrom, and to continue to use and enjoy them to the same extent until the termination of the estate. But such tenant by an original act of his own is not entitled to obtain from the land any profit that would result in an injury to the inheritance. And the widow and minor children do not obtain by the homestead law any greater right in the use and enjoyment of the homestead than this. They have

not the right in their use of the homestead to commit waste, and cannot during their occupancy do or permit any act to be done that will prove an injury to the estate of the reversioner. It is urged by counsel for appellee that they should have the right to open new mines under the authority of the case of *Russell* v. *Berry,* 70 Ark. 318. But it was there only determined that the coal underlying the surface of the earth was land and a part of the homestead; and that therefore the exemption of the homestead extended thereto, so that the coal could not be sold to pay the debts of the decedent. But it was there expressly stated that it was not decided that the widow and children have the right to mine and sell the coal. We therefore hold that during the continuance of the homestead estate of the widow and minor children they do not have the right, as incident to the homestead estate, to open on the land new mines and to mine and sell coal therefrom or to lease the same to others for that purpose.

We do not, however, pass upon the question as to whether or not the probate court, in which the guardianship of these minors may be pending, has the power to order for their benefit the sale of the entire interest of the minors in the underlying coal of the homestead left them by their parent. *Merrill* v. *Harris,* 65 Ark. 355.

It follows, threfore, that the chancery court erred in holding that the widow and minor children had the right to open new coal mines upon the homestead and to mine and remove the coal underlying the same for the purpose of sale.

The decree is reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion.