LAWLEY et al. v. RICHARDSON et al.

No. 14505—Opinion Filed Feb. 5, 1924.

(Syllabus.)

### Homestead—Rights of Surviving Wife—Oil and Gas Royalties.

The surviving widow of a deceased person, occupying land as a homestead under

the laws of the state, is entitled, as against the heirs of decedent, to receive, collect, and use. in her own right, the royalties arising from oil and gas wells developed under a lease executed prior to the death of deceased, and such royalties, during the continuance of the homestead, do not constitute a trust fund for all of the heirs of decedent.

Error from District Court, Garvin County: W. L. Eagleton, Judge.

Action by Anna Lawley and another against F. E. Richardson and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Blanton, Osborn & Curtis, for plaintiffs in error.

H. G. Butts. for defendants in error.

COCHRAN, J. P. W. Richardson died intestate, February 22, 1922, seized of an undivided one-half interest in 80 acres of land in Garvin county. He left surviving him, his wife, F. E. Richardson. and eight children. Before his death, he and his wife had executed an oil and gas lease on said lands. development had been had thereon and two or three gas wells had been brought in, and a producing oil well was brought in on the day on which he died. After his death a number of oil wells were drilled, and are now producing oil. The land was occupied, during the lifetime of Mr. Richardson, as a homestead of himself and family. and since his death the widow. F. E. Richardson, and a minor son, George Richardson, have continued to use and occupy the same. Suit was instituted by the plaintiffs in error. adult children of the deceased, for an interest in the royalties accruing from the oil and gas wells on said premises. The plaintiffs in error contend that the royalties should be held as a trust fund for the benefit of all of the heirs of the deceased, with the right on the part of the widow and minor son to spend the interest on such fund so long as their homestead rights continue. The court rendered judgment for the defendants. The plaintiffs in error state the sole question to be determined on this appeal is as follows:

"The sole question to be determined is whether or not the surviving widow of a deceased person, occupying land as a homestead under the state laws. is entitled as against the heirs to receive and collect absolutely and in her own right the royalties arising from oil and gas wells developed under a lease executed prior to the death of said deceased, or whether said royalties constitute a trust fund of which the heirs of said decedent are beneficiaries and the widow is entitled by virtue of said homestead right to interest on the royalties accruing during occupancy properly invested."

The homestead right of a surviving spouse is determined by section 1224, Comp. Stat. 1921. which is as follows:

"Upon the death of either husband or wife. the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. * * *"

It is contended by the plaintiffs in error that the homestead right of the surviving spouse is not an estate in the land, and they rely on the case of In re Cole's Estate, 85 Okla. 69, 205 Pac. 172. In that case it was determined that the homestead right of the surviving spouse was not an interest in the deceased's property, but it was not held that the homestead right is not an interest in the real estate. The language of the opinion is as follows:

"The right of the surviving spouse to continue to possess and occupy the homestead is an individual right and not an interest in the testator's property. This right is not subject to testamentary disposition, and does not pass under the decedent's will. Neither is the surviving spouse deprived of this right by virtue of an antenuptial contract which provides that the property of each shall remain their separate and individual property and that the other shall not have any interest therein."

In Hawkins v. Corbit, 83 Okla. 275, 201 Pac. 649, the court approved the following from Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681:

"The homestead interest is jointly vested in the husband and wife for the benefit of themselves and family, without regard to which spouse owns the title to the land; the homestead interest is a creature of the Constitution and statutes: nothing like it being known at common law; it is a special and peculiar interest in real estate; it is not a mere inchoate interest in either spouse, to become vested upon the death of the other; this joint right is paramount to the individual rights of either, and. being incapable of division and partition between husband and wife. it cleaves and adheres so closely to the title of the land itself that it cannot be disassociated therefrom by a mortgage foreclosure sale under a court decree to which either husband or wife is not a party."

It is contended by the plaintiffs in error that the right to use and occupy the homestead is similar to the right given to a child born since March 4, 1906, of an al-

lottee of the Five Civilized Tribes under section 9 of the act of May 27, 1908. Reference is then made to Parker v. Riley, 250 U. S. 66, 39 Sup. Ct. 405, and Rogers v. Rogers, 263 Fed. 160. In Parker v. Riley the owner of the land died in 1908 and the lease contract was executed in 1912 by all the heirs of the deceased, so that case does not involve the relative rights of the parties under a lease contract executed prior to the death of the owner of the land. Rogers v. Rogers did involve the rights of the surviving heirs to the royalties accruing under a lease contract executed prior to the allottee's death, and the court applied the rule which had been announced in Parker v. Riley without discussing in any manner the difference in the facts in the two cases.

Our attention is also called to the case of Barnes v. Keys, 36 Okla. 6, 127 Pac. 261, but that case involved the right to oil produced under a lease contract executed by the owner of a life estate and the owners of the reversion. It is unnecessary for a determination of this case to attempt to accurately determine the nature of the homestead right. It is sufficient to say that, under our Constitution and statutes, the widow and minor children have the right under the homestead law to use and enjoy the premises, with the rents and profits therefrom during the time it is used and occupied as a homestead, and that the homestead occupants are not entitled to permit waste, nor to injure or to permit injury to be done to the estate of the reversion. The rights of the widow and minor children during the time the land is used and occupied as such homestead are to be determined by the same rules which have determined the rights of a life tenant. A life tenant is entitled to the full use and benefit of the property, but he is restricted in this use, so that those who are to follow his possession shall not take the property permanently diminished in value, by his failure to do that which an ordinarily prudent man would do in the preservation of his own property or by doing those things that are not necessary for the full enjoyment of the particular estate, and which have the effect of diminishing permanently the value of the future estate. In discussing the applicability of the principles which have for a long time been applied in determining the rights of a life tenant to the out-put of mines and oil and gas wells to the homestead rights of surviving spouses and minor children, the Supreme Court of Arkansas in Cherokee Construction Company v. Harris (Ark.) 122 S. W. 485, said:

"But the homestead law does not create any estate greater or any right more enlarged than that of the occupancy of the land and the right to the enjoyment of the rents and profits therefrom during the life of the widow or minority of the children * * * as affecting the rights of the heirs, therefore, the homestead estate is one for life or for years. The right of homestead is purely the creation of statutes, which have no extraterritorial force. It is generally spoken of as an estate in land and created as an estate for life." Washburn on Real Prop. sec. 540. Now, a tenant for life or for years must not commit waste. Anything that is done or permitted to be done that essentially injures or impairs the estate of the remainderman or reversioner is waste. It is the duty of the life tenant or tenant for years to protect the land from injury to the freehold. * * * It is uniformly held that it is waste to open lands to search for new mines. If there are mines already opened on the land when the tenant takes the estate, it is not waste to continue to work them. The offense of waste consists in the first penetration and opening of the soil. And so it has been held that a mine which was opened at the vesting of the life estate or estate for years may be worked by the tenant even to exhaustion."

An examination of the authorities shows that, although, because of the peculiar character of oil and gas, decisions in mining cases concerning minerals which have a fixed situs are not controlling in contracts concerning oil and gas without some modification, the same rules have been applied in determining the rights of tenants for life to the royalties from oil and gas wells as have been applied from the earliest time in cases involving royalties from coal mines and other similar mines. In Andrews v. Andrews (Ind.) 67 N. E. 461, the court said:

"The owner of land owns absolutely the coal lying beneath the surface. And, while a landowner has certain property rights in gas and oil in the ground, because while in the particular ground they are a part of the realty, yet he cannot be said to be the absolute owner until he has reduced them to possession. His property in them is lost if they escape and go into other land, and they may become the property of an adjoining landowner by being reduced to possession by him through a well drilled on his own land. * * * A tenant for life, being entitled to the profit of the land, is entitled to the royalties from the wells that were opened and in operation when the life estate commenced."

In the above case the lease was executed before the beginning of the life estate and gave the lessee the right to operate for oil upon the land, and to take all the oil

found upon the payment of a certain royalty; if a well was not commenced within a certain time, the lease was void, unless the lessee should pay a certain annual sum during the delay. The court after stating those facts and calling attention to the fact that the lease was in force at the beginning of the life estate, and under its provisions the lessee might open and operate such wells, said:

"* * * And if the whole territory had been developed and the wells in operation under the lease prior to the time the life estate accrued, the royalty, as we have seen, would be payable to the life tenant. The life tenant's right to the rents and profits from open wells rests upon the lawfulness of the severance and conversion of the oil into personalty under the lease. Although the additional wells had not been drilled, yet the right to drill them existed at the beginning of the life estate. The life tenant has not attemped to grant any new right. The additional wells are not opened by any authority from her. They may be opened by virtue of the lease without reference to her wishes in the matter. The opening of new wells under the lease is practically the act by the testator. He authorized the act by the lease, and in contemplation of law the wells may be treated as already opened when the life estate accrued."

In Cherokee Construction Company v. Harris, supra, the court said:

"It follows that the life tenant has the right to use and enjoy the premises as he may see fit, provided he commits no injury to the inheritance. He takes the land in the condition in which it was when the estate vested in him, and he is entitled to all the rents and profits that then issued therefrom, and to continue to use and enjoy them to the same extent until the termination of the estate. But such tenant by an original act of his own is not entitled to obtain from the land any profit that would result in an injury to the inheritance. And the widow and minor children do not obtain by the homestead law any greater right in the use and enjoyment of the homestead than this. They have not the right in their use of the homestead to commit waste, and cannot during their occupancy do or permit any act to be done that will prove an injury to the estate of the reversioner."

In Richmond Natural Gas Company v. Davenport et al. (Ind.) 76 N. E. 525, it was said:

"Where oil or gas has been taken from land by means of wells by the owner of the fee, or he has by his sufficient contract given the right to so take them to another, and thereafter the possession of the land devolves upon a tenant for life, such tenant may enjoy the use of such wells or the royalties therefrom during such tenancy as profits and income from the land in the condition in which it comes to the life tenant. Andrews v. Andrews, 31 Ind. App. 189, 67 N. E. 461; Priddy v. Griffith (Ill.) 37 N. E. 999, 41 Am. St. Rep. 397. But where no operations for oil or gas have been carried on by the owner of the fee or his grantee or lessee for such use, and he has not conveyed such right by lease or grant during his ownership of the fee, a tenant of the land for life has no right to operate himself for oil or gas or by lease or grant to give authority to another to do so."

In Koen v. Bartlett (W. Va.) 31 L. R. A. 128, the court said:

"It is further conceded on the strength of these cases and of the books generally that if these mines of oil and gas had been open when Koen, by cutting down his fee, came in as tenant for life of the immediate freehold, then he would have a right to work them during the continuance of his estate, and take the issues and profits thence produced; for these two are derivative parts of one estate; each in quantity of ownership and order of enjoyment, is measured and determined by time; and, though both are vested in right, the life tenant has the higher segment,—the immediate freehold,— and therefore, the sole right to hold, use and enjoy. And if the mine is open when he comes in, then we conclude that the one who had the right to say has, by his actions, which speak louder than words, manifested his intention that it may be worked. Hence, the life tenant may lawfully mine, sever, and convert the mineral from land into personalty; and this is something in which the owner of the expectant estate of inheritance has no right. * * * A mine lawfully leased to be opened is an 'open' mine, within the reason of the rule as laid down in these cases; and when lawfully opened and worked, as in this case, during the time the freehold estate of the life tenant continues, the profits issuing therefrom, thus lawfully severed and produced, belong of right to him; for the term 'profit,' in law, comprehends the produce of the soil, whether it arise above or below the surface, including product of mines, as well as the herbage growing on the surface."

In re Woodburn's Estate (Pa.) 21 Atl. 16, the testator prior to his death had leased his farm for oil purposes, the lessee entered under the terms of his lease, and at the time of the testator's death three wells on his premises were producing and a fourth was being drilled. The court held that the oil run after the testator's death was a part of the income of the estate.

An examination of the foregoing cases, together with the authorities holding that

a life tenant has no right to lease the lands for oil and gas purposes or to open new mines on the property where the opening of the same is not authorized under a contract executed prior to the death of the owner, discloses that a life tenant takes the land in the condition in which it was when the estate vested in him, and that he is entitled to all of the rents and profits which may accrue from the lands by reason of minerals which may be produced from mines or wells existing at the time of the death of the testator, or which may be produced from mines or wells opened under authority of conveyances executed prior to the vesting of the life estate. The life tenant has no authority by his own acts to obtain a profit on income from the land which would result from an injury to the inheritance, but he is entitled to the income and profits from the land when they are produced by reason of conditions which have been fixed by the deceased prior to his death, although the production of the same may result in an injury to the inheritance. We are also of the opinion that the rule which we have found applicable to life estate applies with equal force to the homestead right of the surviving widow and minor children during the time the property is used and occupied as a homestead.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, MASON, and LYDICK, JJ., concur.