**E. S. HEYSER, Jr., et al., Appellants,**

**v.**

**FRANKFORT OIL COMPANY, a division of Joseph E. Seagram & Sons, Inc., an Indiana corporation, Appellee.**

**No. 7098.**

United States Court of Appeals
Tenth Circuit.

April 22, 1963.

Rehearing Denied May 24, 1963.

James M. May, McAlester (Charles B. Tucker and John B. Baumert, McAlester, on the brief), for appellants.

Louis A. Fischl, Ardmore, Okl. (Eldon E. Scott, Dallas, Tex., Joseph M. Culp and F. Lovell McMillin, Ardmore, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment quieting appellee's title to an oil and gas lease, executed by the occupant of an Oklahoma probate homestead,[1] covering the entire mineral interest, and cancelling appellants' oil and gas lease, executed by the same person, as Guardian of her minor children, purporting to cover their mineral interest in the same tract of land. The case is here on diversity jurisdiction, and the material facts are stipulated.

Odie and Opal Martin owned and occupied, as their homestead, an 80 acre tract of land in Latimer County, Oklahoma, on which, as husband and wife, they executed an oil and gas lease. While the lease was in force, Odie Martin died intestate, leaving his widow and three minor children. The then existing oil and gas lease was later surrendered without any exploration or development. Almost two years thereafter, Opal Martin, as an individual, executed another oil and gas lease on the occupied homestead to R. D. Hamilton, who assigned it to appellee, Frankfort. Sometime later, and while the Frankfort lease was in force, Frankfort suggested that Opal Martin petition the County Court for appointment as Guardian of her minor children, for the purpose of selling an oil and gas lease on the inherited mineral interest of her minor children in the homestead land. Opal Martin was duly appointed Guardian and did advertise and sell to the highest bidder the oil and gas lease, as provided by applicable Oklahoma law. Frankfort was not the successful bidder, and shortly after the sale brought this action to cancel the lease, contending that it was a cloud upon their title to the minerals under their lease from Opal Martin as the homestead occupant. The Guardianship lessees cross-claimed to validate their lease.

The trial Court's judgment validating the Frankfort lease and cancelling the Guardianship lease apparently rests upon the proposition that Opal Martin's admitted rights under Oklahoma law, to the exclusive use and full enjoyment of the probate homestead during occupancy, empowered her to grant an oil and gas lease on the homestead, for the purpose of realizing the ensuing rents and profits therefrom.

Unquestionably, the occupant of an Oklahoma probate homestead, like the holder of a life estate in lands, takes the

1. Title 58 O.S. § 311; 15 Okl.Law Rev. 130.

land in the condition in which it was when the estate vested. And, the occupant is thus "entitled to all the rents and profits which may accrue from the lands by reason of minerals which may be produced from mines or wells existing at the time of the death of the testator, or which may be produced from mines or wells opened under authority of conveyances executed prior to the vesting of the * * * estate." Lawley v. Richardson, 101 Okl. 40, 223 P. 156, 43 A.L.R. 803. And see Hembree v. Magnolia Petroleum Co., 176 Okl. 524, 56 P.2d 851; Baze v. Scott, 10 Cir., 106 F.2d 365; In re Shailer's Estate, Okl., 266 P.2d 613; 18 A.L.R.2d § 18, p. 98; and Kuntz Law Of Oil And Gas, Vol. I, § 8.2, p. 174. This so called "open mine doctrine," apparently has its genesis in the historical concept that since a life tenant or probate homestead occupant takes the land in the condition that existed at the time of the vesting of the estate, she is entitled to use it as the grantor intended that it should be used.[2] Embracing this theory, the appellee takes the position that the execution of the oil and gas lease prior to the death of the grantor operated to dedicate the land to the exploration and production of oil and gas, and that by the execution of the Frankfort lease, the widow merely "continued, extended and renewed the status which existed at the time of her husband's death." They suggest that the Frankfort lease is identical, except as to dates, to the former lease, and that it imposed no greater burden on the remaindermen and was, therefore, clearly within the lessor's right to reap the rents and profits, as contemplated, and to which the land was dedicated when the homestead right accrued.

Professor Kuntz has noted some "uncertainty" concerning the power of the homestead occupant or life tenant to grant a new lease, after the termination of the lease which existed at the time the estate began. It is suggested that "if emphasis be given to the grantor's intention to the effect that he intended that the land be dealt with as he has dealt with it, it would follow that the life tenant, acting alone, would have the right to give a valid lease after the termination of the existing lease, and would be entitled to all proceeds payable under such subsequent lease. If, on the other hand, emphasis be given to the factor that wells are to be drilled under the authority of an existing lease, which is the equivalent of an open mine, then it is apparent that such an authority for opening mines or drilling wells no longer exists after the termination of the outstanding lease, and the life tenant, acting alone, would not be able to lease again and enjoy the proceeds of a subsequent lease." Kuntz Law Of Oil And Gas, Vol. I, p. 177.

We resolve the "uncertainty" against the power of the homestead occupant to grant a new lease, covering the mineral interest in the homestead, after the termination of the lease which was in existence when the homestead estate vested. No case is cited, and we have found none, to support the authority of the homestead occupant to grant an oil and gas lease, simply because the land had been previously devoted or dedicated to the exploration for oil and gas by a lease, in existence at the time of the vesting of the probate homestead estate. The historical rule against waste by a life tenant or a homestead occupant seems to militate against the opening of new mines or the drilling of new wells, after the vesting of the estate, and to confine new exploration to authority expressed or clearly implied at the time of the vesting of the estate. See: American Law of Property, Vol. I, § 2.16, p.

2. In his recent work on the law of oil and gas, Professor Kuntz (Kuntz Law Of Oil And Gas, Vol. I, § 8.2, p. 174) reviews the history of the open mine doctrine, with emphasis on the intention or contemplation of the grantor, as the underlying basis for upholding the right of the life tenant or homestead occupant to use the lands for all purposes to which they were devoted at the time of the death of the grantor and the vesting of the estate.

136 and Vol. V, § 20.6, p. 89. Indeed, the Oklahoma courts speak only of the right of the homestead occupant to "receive, collect, and use in her own right the royalties arising from oil and gas wells developed under a lease executed prior to the death of the deceased." Syllabus of Lawley v. Richardson, supra. And see also: Lusk v. Carter Oil Co. of West Virginia, 172 Okl. 508, 53 P.2d 656. The Oklahoma court has also stated the law of the State to be that the "production and sale of minerals by the homestead occupant or his licensee under authority not existing at the time the right of occupancy vests does constitute waste, and such may be enjoined by the other heirs or their assigns." Hembree v. Magnolia Petroleum Co., supra.

Upon the death of the intestate, the land passed to the heirs at law—an undivided one-third interest to the surviving spouse, and an undivided two-thirds interest to the surviving children. The land was burdened with an outstanding oil and gas lease, with the exclusive right of the probate homestead occupant to the rents and profits to be derived therefrom. Upon the surrender of the outstanding oil and gas lease, all rights thereunder reverted to the heirs, subject of course, to the exclusive right of homestead occupancy. During the homestead occupancy of the mineral estate, the co-tenants are powerless, without the assent of the homestead occupant, to give a lease, for the simple reason that they have no right to possession. Professor Kuntz suggests, however, that "all homestead rights in the minerals may be abandoned and lost by the homestead occupant's purported conveyance of the minerals, although the surface is still occupied as a homestead." Kuntz Law Of Oil And Gas, Vol. I, § 8.5, p. 192. And this is undoubtedly the law in Oklahoma. See: Hembree v. Magnolia Petroleum Co., supra.

It would seem that the conveyance of an oil and gas lease by the homestead occupant, with the right of exploration and development, would operate as an abandonment of the homestead rights in the minerals, quite as effectively as a conveyance of the minerals, or an interest therein. Either conveyance carries with it the right to go upon the land to explore or produce the minerals.[3] This being so, the conveyance of the oil and gas lease by the homestead occupant to Frankfort "opened the way for the rights of all other cotenants to immediately attach to all the minerals beneath the surface of the land," as co-tenants of the homestead occupant. Hembree v. Magnolia Petroleum Co., supra, 56 P.2d p. 858. The Guardianship lease, covering an undivided two-thirds interest in the minerals was, therefore, valid, subject only to the exclusive right of occupancy of the surface in the homestead occupant; the two lessees became co-tenants in the leasehold estate, and the rules of co-tenancy apply.

To be sure, the homestead occupant retained the exclusive right of occupancy of the surface, but by the execution of the oil and gas lease to Frankfort, she necessarily relinquished so much of those rights as is requisite to the full enjoyment of the leasehold rights granted, and having thus relinquished them to her lessee, she did as much for the lessees of her co-tenants. Any other ruling would repudiate the rights expressly granted and necessarily implied in the leasehold estates.

We hold the two leases valid and effective to cover the respective interests of their co-tenant lessors in the mineral estate underlying the homestead, and that the lessees are co-tenants with the equal right to enter upon the lands for the purpose of exploiting their leasehold rights, subject of course, to the surface rights of the homestead occupant.

The judgment is reversed.

3. The appellee suggests that the appellants do not contend that the homestead occupant abandoned her homestead rights in the mineral estate, and say that in any event, the District Court found against them on this point and that the finding is not challenged. We think, however, that the point is fundamental to the issues in this lawsuit, and that the appellants have raised it and argued it