Hoyal B. MOORE et al., Petitioners,

v.

Troy C. VINES et al., Respondents.

No. B–2545.

Supreme Court of Texas.

Oct. 20, 1971.

Dissenting Opinion Oct. 27, 1971.

Rehearings Denied Jan. 5, 1972.

Harless, Fagg & Cravens, David B. Fagg, Dallas, for petitioners.

Strasburger, Price, Kelton, Martin & Unis, Leo J. Hoffman, Dallas, Wynne & Wynne, Gordon R. Wynne, Wills Point, for respondents.

STEAKLEY, Justice.

This suit was brought by parties[1] holding remaindermen interests under the joint will of Ruby N. Vines, deceased, and Troy C. Vines, to obtain a construction of the will and a declaration of their rights as to two tracts of land located in Van Zandt County, Texas, and identified as Tract A and Tract B. Defendants to the action, and respondents here, are Troy C. Vines, the life tenant and independent executor of the decedent's estate; Pan American Petroleum Corporation, Service Pipe Line Company and four assignees through assignments originally made by Troy C. Vines.[2] The question with which we are concerned is whether the open mine doctrine is operative as to Tract A. The courts below answered in the affirmative;[3] our view is otherwise.

The full facts of the case are available in the opinion of the court of civil appeals and only those matters material to our determinations will be stated. Troy and Ruby Vines were married in 1931. Thereafter they acquired the two tracts in question. On March 26, 1951, they executed an oil and gas lease covering both tracts. Upon a subsequent divorce in 1953, Ruby was awarded Tract A as her separate property and Troy was awarded Tract B as his separate property. After remarrying in 1958, they executed a joint will in August of 1959, which provided:

"State of Texas
County of Van Zandt

Know all men by these presents that we, Troy Vines and wife Ruby Vines, residents of Van Zandt County, Texas, above the age of 21 and of sound mind, do hereby make this our last will, revoking all other wills, if any, at any time heretofore made by us or either of us.

Upon the death of either of us, it is our will that all the property owned by both of us, both real and personal and both separate and community go to the survivor to be used by such survivor during his or her life time.

The survivor is hereby appointed independent executor of this will and is directed to act without bond.

Upon the death of both of us the separate real estate owned by Troy Vines shall go to L. R. Vines for his life time, and the separate real estate owned by Ruby Vines shall go to her heirs.

In case L. R. Vines shall die before Troy Vines does then Troy Vines Real estate at the deth (sic) of the survivor shall got to Harold David Moore, grandson of Ruby Vines. The said Harold David Moore to have said land at death of L. R. Vines.

Witness our hands at Grand Saline, Texas this the 13th day of August 1959 in the presence of the undersigned witnesses who are signing this will at our request.

/s/ Troy C. Vines      /s/ Ruby N. Vines
   Troy Vines           Ruby Vines

/s/ Nancy S. Mayne  /s/ H. E. Henderson
    Witness            Witness"

Ruby Vines died in October, 1959. The will was probated and Troy was appointed independent executor. The oil and gas lease which had been executed by Troy and Ruby in 1951 remained in effect during its ten year primary term upon timely payment of delay rentals. No production was obtained and the lease expired in March of 1961.

On April 3, 1961, Troy Vines individually executed and delivered to Pan American Corporation an oil and gas lease covering Tract B, his separate property. The court of civil appeals correctly held that the evidence supported the trial court's

---

1. Hoyal B. Moore and Harold David Moore, son and grandson of decedent by a previous marriage; Vida Aleen Moore Handley, daughter of decedent by the prior marriage, and her husband, joined pro forma, were involuntary plaintiffs.

2. Loyd Russell Vines, Harlie L. Clark, Elise M. Young and Stanton L. Young.

3. Tex.Civ.App., 461 S.W.2d 642.

finding that the joint will was not contractual in nature. Troy Vines was entitled to execute the lease upon his separate property and to enjoy the royalties which resulted therefrom.

On June 1, 1961, Troy Vines, individually and as independent executor, joined by the remainderman, Hoyal B. Moore, and the involuntary plaintiffs,[4] executed an oil and gas lease to Pan American Corporation covering Tract A. This tract was the separate property of Ruby Vines at her death. Production was timely obtained upon Tract A, and Pan American paid $64,500 in royalties to Troy individually and as independent executor; he has expended all but $2,150.

On October 3, 1963, Vida Aleen Handley, joined by her husband, made a conveyance by deed to Troy Vines of all her one-half interest in the royalties accruing from production on Tract A. This portion, to be paid during Troy's lifetime, remained his regardless of the applicability of the open mine doctrine to the tract. The issue with which we are concerned is the correct disposition of the remaining one-half interest in the royalty proceeds from Tract A, as between Troy, the life tenant, and the remaindermen.

Ordinarily a life tenant who dissipates the corpus of an estate is liable to the remaindermen for waste. Waste is defined as "permanent harm to real property, committed by tenants for life or for years, not justified as a reasonable exercise of ownership and enjoyment by the possessory tenant and resulting in a reduction in value of the interest of the reversioner or remainderman." American Law of Property, Vol. I, ¶ 2.16e. Mineral royalties and bonuses are part of the corpus and the life tenant is entitled only to the interest thereon. The open mine doctrine forms an exception to the general rule. Clyde v. Hamilton, 414 S.W.2d 434 (Tex.Sup.1967). Blackstone expressed the original doctrine in this manner: "To open the land to search for mines of metal, coal, &c., is waste; for that is a detriment to the inheritance: but if the pits or mines were open before, it is no waste for the tenant to continue digging them for his own use; for it is now become the mere annual profit of the land." 2 W. Blackstone, Commentaries *282. See also Woodward, The Open Mine Doctrine in Oil and Gas Cases, 35 Texas L.Rev. 538 (1957). We have held that the doctrine is invoked where wells were producing under a lease executed by the testator at the time the life estate came into being, and where producing wells were drilled after the vesting of the life estate but under an oil and gas lease in force and effect at the time. Youngman v. Shular, 155 Tex. 437, 288 S.W.2d 495 (1956); Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779 (1951); and Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986 (1905). It is said that the fiction will be indulged that the wells were opened by the testator or settlor where they were drilled under authority of an oil and gas lease executed by them; or, as it has been otherwise expressed, the drilling of wells under authority of an existing lease is the equivalent of an open mine. See 1 Kuntz, Oil and Gas, § 8.2 (1962). It is further stated in this treatise that there is uncertainty as to the result if the lease in existence at the time the life estate began thereafter terminates. The comment is made that solution of the problem turns on whether emphasis is given to the factor that wells are drilled under authority of an existing lease which is the equivalent of an open mine, it being apparent that such authority for opening mines or drilling wells no longer exists after termination of the outstanding lease; or if emphasis is given to the intention of the grantor that the land be dealt with as he had dealt with it, from which it would follow that the life tenant would be entitled to enjoy the proceeds of a subsequent lease.

The Supreme Court of Oklahoma in Lawley v. Richardson, 101 Okl. 40, 223 P.

---

4. Vida Aleen Moore Handley and her husband, joined pro forma.

156, 43 A.L.R. 803 (1924), reached these conclusions:

"An examination of the foregoing cases, together with the authorities holding that a life tenant has no right to lease the lands for oil and gas purposes or to open new mines on the property where the opening of the same is not authorized under a contract executed prior to the death of the owner, discloses that a life tenant takes the land in the condition in which it was when the estate vested in him, and that he is entitled to all of the rents and profits which may accrue from the lands by reason of minerals which may be produced from mines or wells existing at the time of the death of the testator, or which may be produced from mines or wells opened under authority of conveyances executed prior to the vesting of the life estate. The life tenant has no authority by his own acts to obtain a profit on income from the land which would result from an injury to the inheritance, but he is entitled to the income and profits from the land when it is produced by reason of conditions which have been fixed by the deceased prior to his death, although the production of the same may result in an injury to the inheritance."

Among the cases examined was Andrews v. Andrews, 31 Ind.App. 189, 67 N.E. 461, (1903) where the mineral lease in question was executed before the beginning of the life estate. In upholding the right of the life tenant to the rents and profits thereunder, the Court emphasized that the life tenant had not attempted to grant any new right; that the additional wells were not opened by any authority from the life tenant; that the wells were opened by virtue of a lease without reference to the wishes of the life tenant; and that the opening of the new wells under the lease was, in practical effect, the act of the testator. This same emphasis is present in Cherokee Const. Co. v. Harris, 92 Ark. 260, 122 S.W. 485, (1909) where it was said that a life tenant is not entitled by an original act of his own to obtain from the land any profit that would result in an injury to the inheritance.

The Court in Heyser v. Frankfort Oil Co., 316 F.2d 441 (10th Cir. 1963), considered a comparable problem in this manner: "Unquestionably, the occupant of an Oklahoma probate homestead, like the holder of a life estate in lands, takes the land in the condition in which it was when the estate vested. * * * The historical rule against waste by a life tenant or a homestead occupant seems to militate against the opening of new mines or the drilling of new wells, after the vesting of the estate, and to confine new exploration to authority expressed or clearly implied at the time of the vesting of the estate."

█ The better view, in our opinion, is that the open mine doctrine is not applicable beyond the lease in existence at the time of the vesting of the life estate of Troy Vines, i. e., beyond the last leasing act of Ruby Vines. The rights of Troy Vines in such respect rested on this lease and expired upon its termination. The lease executed after the vesting of the life estate was not the equivalent of an open mine at such prior time. Troy Vines as life tenant was not authorized by the will of Ruby Vines to lease the land for mineral development nor was he given enjoyment of the proceeds from any such lease. Under these circumstances we are unable to attribute an intent to Ruby Vines that the land should continue to be leased for mineral development for the benefit of Troy Vines with a resulting diminishment in the value of the interest of the remaindermen. Cf. Bergendahl v. Blanco Oil Co., 440 S.W.2d 81 (Tex.Civ.App.1969, writ ref. n. r. e.) and Johnson v. Messer, 437 S.W.2d 643 (Tex.Civ.App.1969, writ ref. n. r. e.).

We are otherwise in agreement with the conclusions of the court of civil appeals. For the reasons stated, however, we reverse the judgments below and remand the cause to the trial court for further proceeding consistent with this opinion.

It is so ordered.

McGEE, Justice.

I respectfully dissent.

In addition to the facts relied upon by the majority, one other fact is significant.

It was stipulated by the parties that a prior oil and gas lease was executed by Troy C. Vines and wife, Ruby Vines, to Fred Herschback, dated March 12, 1943. The record reflects that the land was from 1943 until the death of Ruby Vines under an oil and gas lease. Hence it was clearly the intent of both Troy and Ruby Vines to procure production from the land almost from the time of its acquisition in 1941. Their *intention* was not merely to lease the land for oil and gas, but to secure production as soon as possible.

The common law regarding the open mine doctrine has been interpreted through a long line of cases. Bagot v. Bagot, 32 Beav. 509 (1863); Grenville-Nugent v. Mackenzie, A.C. 83, 90 (1900). The key word in these and cases following is *intention*—intention determined at the death of the testator.

Lawley v. Richardson, 101 Okl. 40, 223 P. 156, 43 A.L.R. 803 (1924), relied upon heavily by the majority merely holds that the same rule applicable to life estates applies with equal force to the homestead right of the surviving widow and minor children during the time the property is used and occupied as a homestead. Of greater interest are cases cited in the *Lawley* opinion. Without exception all look to the intent of the testator at the time of his death and the formation of the life tenancy.

The rule cited in and reaffirmed by Cherokee Construction Company v. Harris, 92 Ark. 260, 122 S.W. 485 (1909), is that the life tenant takes the land in the condition in which it was when the estate vested in him. Similar language is found in a line of Indiana cases beginning with Andrews v. Andrews, 31 Ind.App. 189, 67 N. E. 461 (1903), which relies heavily upon the English common law. Viner v. Vaughn, 2 Beav. 466 (1840); Bagot v. Bagot, supra.

Cases noted from other U.S. jurisdictions all rely upon the earlier English common law. All reach their respective conclusions by looking at the intent of the tes-

tator as of his death and the commencement of the life estate. None are cited in any brief before this Court or by the majority opinion to the contrary.

The open mine doctrine developed from the principle that the intention of the creator of the life estate controls. Under this doctrine, if the owner of a tract opens a mine, through lease or production before he creates the life estate, unless a contrary intention appears in the instrument creating the life estate, it should be presumed that the creator of the life estate intended to allow the life tenant to continue the exploitation of the mine and receive the royalty income therefrom.

The rights of the life tenant must be ascertained at the time of vesting of the life estate. Tract A was subject to an oil and gas lease at the time of Ruby Vines' death and the vesting of Troy Vines' life estate. Youngman v. Shular, 155 Tex. 437, 288 S. W.2d 495 (1956); Clyde v. Hamilton, 414 S.W.2d 434 (Tex.Sup.1967); Mitchell v. Mitchell, 157 Tex. 346, 303 S.W.2d 352 (1957); Lange, Texas Land Titles § 847 (1961); Woodward, The Open Mine Doctrine in Oil & Gas Cases, 35 Texas L.Rev. 538 (1957); Annot., 18 A.L.R.2d 98 (1951); Kuntz, The Law of Oil & Gas § 8.2 (1962); Comment, The Open Mine Doctrine, 8 Hous.L.Rev. 753 (1971); Guittard, Rights of a Life Tenant in Production and Use of Oil and Gas, 4 Tex.B.J. 365 (1941).

Mitchell v. Mitchell, supra, involved the construction of a testamentary trust which in effect provided that the income of the trust should be paid to the life beneficiaries and the principal held intact until 21 years after the death of the last remaining life beneficiary, at which time the property should be delivered to the remaindermen. We held that the royalties constituted a part of the corpus of the estate and not income. We concluded that the question as to whether the royalties constitute a part of the estate or income could be decided *only* by a construction of the will as a whole. Our holding that the royalties

constitute a part of the estate and not income was based on the conclusion that " * * * the expressed intention of the testator or testatrix is controlling over the open mine rule." 157 Tex. at 349–50, 303 S.W.2d at 355. The opinion points out clearly the distinction between the facts of that case and the facts before us now. We said there: "Had this will made a simple devise to certain designated parties, the open mine rule of presumed intent would apply, but that is not the character of the devise in this will." 157 Tex. at 349, 303 S.W.2d at 354.

The Vines' joint will contained no expressed intention with regard to the distribution of royalties as between the life tenant and the remaindermen. In Clyde v. Hamilton, supra, we said:

"An exception to the rule that a life tenant is entitled to nothing but interest on the royalties and bonus is found in the 'open mine' doctrine. At common law, if mines or pits were open at the time the life estate began, it was not waste for the life tenant to continue digging for his own use; and the proceeds were regarded as a profit from the land. When the settlor of a trust or a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as this settlor or testator could. So the proceeds did not become part of the corpus to be preserved for the remaindermen. * * *" 414 S.W.2d at 439.

The law is clear in Texas that the creation of an oil and gas lease prior to the vesting of a life estate, absent language in the deed, will, or trust agreement expressing a different intention of the creator of the life estate, will give rise to the application of the open mine doctrine. This has been shown above. This is true even though production is obtained after the death of the creator of the life estate. The question here raised is the same as that posed in Mitchell v. Mitchell, 298 S. W.2d 236 [Tex.Civ.App.1957, rev'd on oth-

er ground as above noted, 157 Tex. 346, 303 S.W.2d 352 (1957)]: "Must the royalty come out of the very lease made by the testatrix in order to constitute income payable to the life tenant?" 298 S.W.2d at 248. I agree with the answer given in that opinion and the comment of Professor Woodward on that opinion in 35 Texas L. Rev. 538:

"A second tract of 150 acres was leased to Sun Oil in 1935. The lease was in force in 1940, when the testatrix died, by virtue of payment of delay rentals. It continued in force until 1945, the end of the primary term, and then expired. Then in 1946 the testamentary trustees executed a new lease on this tract to Gainer. Thus was presented one of the questions posed by Judge Garwood in the *Shular* case: Does the open mine doctrine apply where a lease was in force at the time the creator of the life estate died, but thereafter expired without production, and a new lease to a different lessee is executed by the trustees: The court concluded that it does. It stated the issue in this way: 'Whether the trustees' lease should be considered as opening a new mine in land to which the "open mine" doctrine has previously had no application, or as being only a renewal, continuing in existence a previous condition or use of the land?' It was reasoned that if production has been going on under the lease executed by the testatrix at the time of her death, there could be no question, but must the royalty issue out of the very lease executed by the testatrix? The Court examined the Kentucky case of Daniels v. Charles. There hard minerals were involved. The husband and wife executed a contract to give a lease for coal mining operations two years before the husband died. This contract was never performed and expired under its own terms about a year before the husband died. Some seven years later the wife made a lease to the same mining company that had contracted to take a lease during husband's lifetime. The court said that had the contract been executed by the

husband the lease would still be in force at the time the wife executed the lease, so that the execution of the lease would have been in performance of the contract, the lease could have been attributed to the act of the husband. In such a case the wife, by virtue of her dower rights, would have been entitled to payment of ⅓ of the royalties. However, since the contract executed by the husband had expired prior to his death, there was no room for application of the open mine doctrine.

"The Texas court (in Mitchell) rejected this reasoning as applied to the facts under consideration. *It began with the fundamental premise that the life tenant's rights are fixed at the moment that his life estate comes into being, and not at some later date.*" (Emphasis added.)

The following considerations are also useful in a case such as this: (1) the lease to Pan American executed by Troy C. Vines on Tract A was executed within a few months of the expiration of the lease to Cities Service in which Ruby Vines had joined; and (2) the record does not indicate that Tract A could have been put to some better or different use which would prohibit oil or gas production when the lease to Pan American was executed, so there is no reason to believe that Ruby Vines' earlier manifested intention would have been different when the second lease was executed. Comment, The Open Mine Doctrine, supra at 764–765.

The judgments of the trial court and the Court of Civil Appeals should be affirmed.

DENTON, J., joins in this dissent.

## ON MOTION FOR REHEARING

STEAKLEY, Justice.

Petitioner, Hoyal B. Moore, has filed a Motion for Rehearing urging that we render judgment in his favor against Respondent, Troy C. Vines, for the sum of $32,-251.51, with interest thereon from February 27, 1970, and that this cause be remanded to the trial court solely for the purpose of permitting the determination of the amount of royalties presently held in suspense by Pan American Petroleum Corporation, and for appropriate orders for the investment of these funds during the lifetime of Vines. Petitioner says that "This money [the $32,-251.51] should be paid to him now and not at the time of the death of Troy C. Vines." The argument is that the life estate of Vines in the royalties paid to and expended by him were forfeited for waste; otherwise, of course, interest on this sum will continue to accrue to Vines as life tenant. See Clyde v. Hamilton, 414 S.W.2d 434 (Tex.1967). There is no suggestion of the existence of statutory authority for forfeiture of a life estate under such circumstances.

It appears to be generally recognized that forfeiture of a life estate, whether of the entire estate or limited to the thing wasted, rests upon specific statutory enactments. 31 C.J.S. Estates § 65(5) (1964); 28 Am. Jur.2d, Estates, § 101; Annotation, 16 A.L.R.3d 1344; Summers, The Law of Oil and Gas, ¶ 36. It has been further said that forfeiture of the estate for life for waste is a drastic sanction which is granted sparingly and then strictly within statutory authority for such forfeiture. Restatement of Property, § 152(d), comment f, at 503 (1936).

Apart from the absence of statutory authority, we are of the view that in any event the conduct of Vines under the circumstances was not so unconscionable as to support a forfeiture of his life estate to the extent sought by Petitioner.

The Motions for Rehearing of Hoyal B. Moore, Petitioner, and of Troy C. Vines, Respondent, are overruled.