Note.—See under (1) 38 Cyc. pp. 2090, 2092, 2094. (2) 38 Cyc. p. 2104.

---

**FULLER et al. v. HOLDERMAN et al.**

No. 14567—Opinion Filed Jan. 5, 1926.

Rehearing Denied March 16, 1926.

(Syllabus.)

1. **Executors and Administrators—Validity of Sale of Land for Debts—Homestead as "Assets" of Estate After Waiver of Widow's Rights.**

Where plaintiffs, who are heirs of a deceased person, seek equitable relief to vacate a conveyance of land sold by the administrator of the decedent to pay his debts, and in their petition plead that the widow filed a waiver of homestead rights with the petition of the administrator, and the probate court finds that the land is not a homestead, and orders the same sold, the sale cannot be vacated on the ground that the land was not assets in the hands of the administrator to pay debts.

2. **Same—Indians—Removal of Restrictions—Homestead Allotment of Adopted Citizen—Liability for Debts.**

Section 4 of the Act of Congress of May 27, 1908, removing restrictions on certain of the citizen allottees of the Five Civilized Tribes of Indians, left no inhibitions against subjecting the allotted "homestead" of a deceased adopted white citizen of the Cherokee Nation to the payment of debts arising after restrictions were removed.

Error from District Court, Craig County; A. C. Brewster, Judge.

Action by Nellie Fuller et al. against Pearl Holderman and the Federal Land Bank of Wichita, Kan. Judgment for defendants, and plaintiffs appeal. Affirmed.

Vance & Bliss and C. Caldwell, for plaintiffs in error.

Kornegay & Probasco, for defendants in error.

BRANSON, V. C. J. This cause was prosecuted in the district court of Craig county by certain of the heirs at law of Marion Holderman. They sought to vacate and set aside a sale made by the administrator. Judgment was rendered in the district court against them, to reverse which they make assignments of error in this court hereinafter discussed.

The decedent, Marion Holderman, was allotted certain land in the Cherokee Nation as an adopted white citizen of said Indian tribe. He departed this life in the year 1916, a resident of said county of Craig, making the home of himself and his wife, Mary Holderman, on the land here involved, although he had been, at the time of his death, for a period of time in the state of Kansas, in which latter state he died.

The gravamen of the plaintiffs' cause of action was to vacate and set aside the administrator's deed, as having been made without authority of law, and having been induced by the fraud of the purchaser, Pearl Holderman, who was also one of the heirs at law of the said deceased.

To reverse the judgment, they assign error in this, to wit: That the land was the homestead of the deceased, under the law of the state of Oklahoma, and 20 acres of the land sold was what was designated in the Indian allotment acts as a "homestead," and that by reason thereof the land was not an asset in the hands of the administrator for the payment of debts. Again, they contend that the purchaser secured the sale by fraud; that the appraisers did not view the land, and that the plaintiffs were entitled to a trial by jury.

The last of said mentioned assignments is disposed of by the construction placed upon the allegations of the petition, and we think the cause was in equity and triable to the court.

That the appraisers did not view the premises at the time of making the appraisement, we think, can avail them nothing, for the record discloses that the appraisers were well acquainted with the land, its character, and the improvements thereon.

That the sale was procured by the fraud of the purchaser was adversely determined by the trial court, and the holding as to that is not against the clear weight of the evidence.

The first assignment, however, requires more serious consideration. We shall dispose of it on the theory on which it is presented by the plaintiffs in their brief. After quoting the state statutes touching the homestead, they say:

"So in this case, when Marion Holderman died, his homestead descended immediately to his heirs, and was subject only to the right of the widow to occupy. It was not subject to control or possession by the administrator, and was not subject to administration proceedings. The right of the widow to use it is not an interest in the property, but only a right to use it, if she chooses. If she does not want to use it, she may agree to a partition of the land at once. But no act of hers will make it 'assets' in the hands of the administrator to pay unsecured debts. We presume that in a proper case, with full understanding, she could bind herself, but she could not bind the other heirs."

It is to be noted that in this contention made by the plaintiffs they assert that no act on the part of the widow could make the land in question assets in the hands of the administrator to pay debts. Under the Constitution of this state, the homestead is reserved to the family. It might be claimed by either the husband or the wife. In the instant case, there were no minor children. At the time of the death of the proprietor, only one person was in existence to whom the law extends the privilege of asserting a possessory right to the land as a homestead. Unless that right exists, and is asserted, the land is not stamped in its descent to the heirs with anything that savors of a possessory right, such as that preserved for the benefit of those entitled under the law to a homestead. And in this connection plaintiffs specifically plead that the widow executed a waiver of any rights that she might have (whether disputed or conceded) in and to the land, by reason of the homestead exemption, and that said waiver was filed with the petition. The petition referred to was the petition of the administrator filed in the administration proceeding, and seeking the sale of the land for the payment of the approved claims against the estate of Marion Holderman. Upon this petition, which showed on its face that no claim was made to the possession of the land under the homestead law, the county court found and adjudged that the land was an estate in the hands of the administrator. to pay the debts chargeable against the estate, and directed in the order of sale that the land be sold for that purpose.

Undoubtedly the probate court, in the exercise of its jurisdiction, had power to determine whether this land was or was not a

homestead, and its judgment that it was not such became a finality. No appeal was taken therefrom, and in the trial of the instant case the finding of the trial court was against the contention that the same was procured by any fraudulent conduct.

Several cases are cited on these assignments of error, and that part of these assignments which goes to the question that 20 acres of the land sold was allotted to the deceased as a "homestead" under the allotment act. It must be borne in mind that the homestead, under the Cherokee allotment acts passed by the national Congress, has no bearing upon the homestead exemption allowed under the state law, but in the scheme of allotment of the lands in severalty, among the citizens of the Cherokee Nation, a certain fractional part of the lands set aside to each citizen was required to be designated as a "homestead," and was useful in the allotment scheme, principally in that different restrictions against alienation were placed upon "homesteads" from those placed upon the remainder of the land allotted to each citizen.

In the instant case, the question would arise as to whether, under the act of the national Congress, at the time of the death of the said Marion Holderman, that portion of his land so designated and included in the bulk here conveyed was subjected to the payment of debts for which it could not be subjected by reason of the acts of Congress. As stated above, the deceased was an adopted citizen of the Cherokee Nation, and was in fact a white man. The act of May 27, 1908, removed all restrictions as against alienation of the lands of persons so enrolled. Section 4 of said act specifically provided:

"That all land from which restrictions have been or shall be removed, shall be subject to taxation, and all other civil burdens, as though it were the property of other persons than allottees of the Five Civilized Tribes, provided that allotted lands shall not be subjected or held liable to any form of personal claim or demand against the allottees, arising or existing prior to the removal of restrictions. other than contracts heretofore expressly permitted by law."

It is clear from the record that the obligations charged by the probate court against the estate of the deceased were such as arose long after the passage of the Act of May 27, 1908, and that none of them were for indebtedness, contractual or otherwise. existing prior to the removal of restrictions on said land. The state cases cited and relied upon by the plaintiffs fell under that class of obligations expressly prohibited as

being claims against the property, under section 4.

But, again, plaintiffs say that this question is at rest by a decision of the Supreme Court of the United States, in the case of Choate v. Trapp, 56 L. Ed. 941. We cannot agree with plaintiffs' contention that this case is susceptible of such construction, but, on the contrary, believe that said decision should be interpreted as being confined to the taxability of the lands there in question, under the applicable provisions of the federal statute, and that the same had no reference to the effectiveness of the congressional act removing the guard against alienation which Congress had placed upon the allotted lands of citizens of the tribe. We think that section 4, supra, of the said act of Congress, as far as alienation by the allottee, or the land being an asset in the hands of the administrator in the event of his decease, where the claim accrued after the restrictions were removed, left the said homestead part of the land so allotted on the same footing as if it had been land of persons other than citizens of the Cherokee Nation.

We believe that this disposes of the errors assigned and presented in the briefs, and that the judgment of the trial court is not thereby shown to have been erroneous, and must be affirmed.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY JJ., concur.

HARRISON, J., absent and not participating.

Note.—See under (1) 24 C. J. p. 566 § 1479: p. 666, § 1655; anno. 56 L. R. A. pp. 63. 64; 11 R. C. L. p. 121. (2) 24 C. J. p. 567, § 1479 (Anno).