## HEMBREE et al. v. MAGNOLIA PETROLEUM CO. et al.

No. 25087. Oct. 1, 1935.

Rehearing Denied Jan. 14, 1936.

Application for Leave to File Second Petition for Rehearing Denied April 21, 1936.

Goode, Dierker & Goode, for plaintiffs in error.

W. H. Francis, B. B. Blakeney, Hubert Ambrister, W. R. Wallace, B. B. Blakeney, Jr., Hunter L. Johnson, Benjamin Mossman, Simons, McKnight, Simons, Mitchell & McKnight, N. E. McNeill, I. C. Saunders, W. R. Stokes, T. H. Wren, Arrington & Evans, and M. A. Dennis, for defendants in error.

GIBSON. J. In the year 1922, A. O. Hembree, joined by his wife, Maudie Hembree, executed an oil and gas mining lease on the west 40 acres of an 80-acre tract of land owned by him in Pottawatomie county, Okla., to the assignor of the plaintiff, Magnolia Petroleum Company. On the 12th day of January, 1924, Hembree and his wife conveyed to B. E. Green an undivided one-half interest in and to the oil and gas and mineral rights in and under the north 40 acres of said 80 acres of land.

A. O. Hembree died on the 25th day of September, 1924, seized and possessed of said land, leaving as his heirs his said wife, Maudie Hembree, and ten children. At the time of his death Hembree occupied said land with his wife and eight minor children as a homestead. Two of the children were married and lived elsewhere.

Maudie Hembree and the minor children continued to occupy said land; and on January 3, 1925, Maudie Hembree was appointed administratrix of Hembree's estate, and on the 20th day of August, 1925, the estate was closed, a decree of distribution was entered by the county court determining the heirs. In her petition for appointment of administrator, in the inventory, and in the petition for distribution, Maudie Hembree designated the 80 acres of land as the homestead of herself and minor children.

On May 13, 1926, after the decree of distribution, Maudie Hembree, in her own right, conveyed a one-eighth interest in and to the oil and gas rights in and under the land to I. H. Townsend and C. B. Hyde.

Maudie Hembree and her minor children continued to live upon the land until her death, December 4, 1926. After her death the minors were removed to the home of the older daughters in compliance with a previous request of the mother.

On February 3, 1927, one Bert Harris was appointed guardian of the eight minor children, and was also appointed administrator of the estate of Maudie Hembree. He rented the land out for agricultural purposes and collected the rents. The Magnolia Petroleum Company discovered oil on the premises. The

children had been taken away by the older sisters.

Harris sold an undivided one-sixteenth interest of the oil and gas rights of the minors at a guardian's sale to John Brandenburg. The evidence shows that the sale was made to pay off a mortgage on the land which existed before Hembree purchased the same and which had been extended by Maudie Hembree, while administratrix, under order of court.

After the discovery of oil three of the minors had majority rights conferred upon them. Another of the minors reached majority and disclaimed as against the plaintiff.

On June 11, 1928, a decree of distribution was entered in the Maudie Hembree estate, and the matter closed. The decree found that the one-third interest of Maudie Hembree descended to her ten children by Hembree and to Nellie McGee, her child by a former marriage, in equal shares.

Some of the defendants claim through deeds from Nellie McGee and other adult heirs, and guardian's deed executed by Harris.

In the final decrees of distribution in the estates of A. O. Hembree and Maudie Hembree, the homestead rights were not mentioned. Under these decrees the Magnolia Petroleum Company paid to the guardian of the minor heirs their proportion of the royalties as their interests in the fee appeared.

Disputes arose as to the extent of the interests of the respective parties in the royalties from oil and gas produced from the lands in question, the west half of the 80-acre tract, and the Magnolia Petroleum Company commenced this action in the district court of Pottawatomie county to determine the interests of the parties. By order of the court the royalties are impounded. Some royalties had been paid out prior to commencing the action.

The minor Hembrees claim all the royalty under their statutory homestead right to occupy the premises.

Plaintiff, Magnolia Petroleum Company, and other defendants claim there existed no homestead rights in the minors.

The theory of the minor heirs is that under the open mine doctrine they are entitled to all the royalties produced from the alleged homestead; and we say that under the authority of Lawley et al. v. Richardson et al., 101 Okla. 40, 223 P. 156, this theory is correct, subject, however, to the qualifications

hereinafter pointed out. In that case we find in the body of the opinion the following:

"An examination of the foregoing cases * * * discloses that a life tenant takes the land in the condition in which it was when the estate vested in him, and that he is entitled to all the rents and profits which may accrue from the lands by reason of minerals which may be produced from mines or wells existing at the time of the death of the testator, or which may be produced from mines or wells opened under authority of conveyances executed prior to the vesting of the life estate. * * * We are also of the opinion that the rule which we have found applicable to life estates applies with equal force to the homestead right of the surviving widow and minor children during the time the property is used and occupied as a homestead."

See, also, Tarman v. Pierce, 168 Okla. 348, 33 P. (2d) 203. This is true if in fact they do occupy the land as a homestead, and have not disposed of their right to receive the royalties accruing. In this state the statutory homestead of a surviving spouse and the statutory homestead of surviving minor children are given the same status, in so far as rents and profits are concerned, as an estate for life (Lawley et al. v. Richardson et al., supra), and the life tenant (or the statutory homestead occupant) "takes the land in the condition in which it was when the estate vested in him."

It is the contention of the Magnolia Petroleum Company and of the defendants other than the minor defendants that the homestead right never accrued to these minors; that if such right did accrue it had been abandoned by the acts of the guardian of the minors and by acts of the mother, and by reason of the fact that the decrees of final distribution in the estates of the deceased parents amounted to an adjudication that there existed no homestead rights and that said decrees are final and not subject to collateral attack, and that the Magnolia Petroleum Company, in paying out the royalties previously paid out, was entitled to rely on said decrees.

From a judgment denying the homestead claim of the minor defendants and their claimed right to receive all of the oil royalties, they have appealed to this court.

Their assignments of error are presented and argued under four propositions. The first proposition is as follows:

"The court erred in finding and holding that the minor Hembrees were barred from asserting their homestead rights in and to the land involved by the decree of distribution rendered by the county court in the probate of the estate of their father, A. O. Hembree, deceased."

That portion of section 1223, O. S. 1931, relating to statutory or probate homesteads is as follows:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

Upon the death of A. O. Hembree the homestead right vested immediately in Maudie Hembree, his widow. And the trial court so found. The right to claim and use the homestead vests immediately, but the occupancy and use is optional with the surviving husband or wife. The statute says that the survivor **may** occupy and use the land. That it may be abandoned by the establishing of another homestead by the surviving spouse and by other declarations and actions on his or her part we think can hardly be questioned, (13 R. C. L. 652), and such abandonment by the survivor is also an abandonment by the minor children (13 R. C. L. 653). It is not an estate that can be the subject of barter and sale, but may be waived, abandoned, or renounced at will, without consideration, by parties who are legally qualified to waive such rights. In re Gardner's Estate, 122 Okla. 26, 250 P. 490; Taylor v. Campbell, 139 Okla. 110, 281 P. 243. Whether or not such has been done is a question of fact to be determined from the acts of the parties.

The homestead is not subject to debts of the deceased therefore is not subject to administration in the county court (Kimberlin et al. v. Anthony, 124 Okla. 170, 254 P. 1), and section 1223, supra, so provides. This question is so well settled in this state that it cannot now be questioned. The county courts of this state may decree distribution of estates and the partition or division thereof in all cases within their jurisdiction. It was proper for the county court of Pottawatomie county to determine the interests of the heirs in the estate of inheritance. The law specifically confers upon it such jurisdiction. It had no jurisdiction of the homestead estate. It properly respected the assertions of Maudie Hembree that the lands presumed subject to administration were claimed by her as a homestead. The court by decree could not impress upon the land the homestead character. That had already been so done by law. It is apparent that the homestead is a distinct interest from title.

It is a creature of the Constitution and statutes, unknown to the common law. (In re Musselman's Estate, 167 Okla. 560, 31 P. (2d) 142.) In Kimberlin v. Anthony, 124 Okla. 170, 254 P. 1, it was held as follows:

"The homestead of a deceased party is not subject to administration proceedings. No order of the county court is required to entitle the surviving husband or wife to continue in possession and occupancy of the homestead. The right to occupy the homestead is given by the statute and requires no order of court to vitalize it and give it effect."

The plaintiff argues that, since the petition for appointment of administrator, the inventory and appraisement, and the petition for decree of distribution in the A. O. Hembree estate affirmatively disclosed that the lands were claimed as a homestead, and since the decree of distribution failed to make mention of the homestead, it must be conclusively presumed that the court found the land was not a homestead. The right to occupy the homestead and to receive the rents and profits therefrom is a valuable right in land. Even admitting that the court did have jurisdiction to establish by decree the existence or nonexistence of a homestead right, a decree which does not purport to allow or deny such right could not be said to disallow the same by implication. The petition upon which said decree was entered properly apprised the court of the nature of the estate to be distributed, and the court acted upon the averments of the petition and distributed only that portion over which it had jurisdiction. The judgment roll affirmatively shows all jurisdictional and nonjurisdictional facts. There is nothing remaining from which to indulge presumptions.

The trial court found that A. O. Hembree died while in possession of the 80 acres heretofore mentioned, and that the land descended to his heirs impressed with the homestead character, "which right had been and may be assimilated to a life estate in the widow and an estate for years as to the children." In view of this finding of fact, and by reason of the views hereinabove expressed, it is clear that the trial court was in error in its finding as a conclusion of law that the decree of the county court wiped out the homestead claim of Maudie Hembree.

Pennington v. Woodner-McGaugh, 54 Okla. 110, 153 P. 875, is authority that a surviving spouse is not deprived of the homestead right by a decree of distribution distributing the homestead to heirs. In that case it was said:

"The fact that the surviving spouse of a decedent is appointed by the county court to administer the estate of such decedent, files an inventory in which the homestead is listed as a part of the assets of the estate, files a final account in which such homestead is listed and procures the approval of said account and an order of distribution in which order the court determines who the heirs to such estate are and their respective interests therein, does not deprive such spouse of the right to continue to possess and occupy such homestead in accordance with the terms of section 5265, Comp. Laws 1909 (section 6328, Rev. Laws 1910) ; and does not constitute a waiver or abandonment of such homestead so as to authorize the partition of such homestead at the suit of another heir."

This rule is followed in Wares et al. v. Knabe et al., 84 Okla. 66, 202 P. 774; Randel v. Heckman, 114 Okla. 190, 245 P. 589; Ward v. Cook, 152 Okla. 234, 3 P. (2d) 728.

In Hardridge v. Hardridge, 168 Okla. 7, 31 P. (2d) 597, this court held that it was proper for the county court to establish the interest of heirs in homestead property in a decree of distribution, but such decree is not conclusive as to the right to possession of the homestead.

The principal case relied upon by the plaintiff, Magnolia Petroleum Company, is Estes v. Pickard, 141 Okla. 60, 283 P. 1004. In that case the administrator sold the alleged homestead at probate sale to pay debts of the deceased. Suit was brought by homestead claimants to recover the property on the theory that the county court had no jurisdiction of the homestead estate. This court followed the rule expressed in Fuller v. Holderman, 114 Okla. 136, 244 P. 417, to the effect that where heirs seek to vacate a conveyance of land sold by administrator to pay the debts of deceased, and in their petition the heirs plead that the widow filed a waiver of homestead rights with the petition of the administrator and the probate court finds that the land is not a homestead and orders the same sold, the sale cannot be vacated on the ground that the land was not assets in the hand of the administrator to pay debts. In the body of the opinion the court makes the following statement: "Undoubtedly the probate court, in the exercise of its jurisdiction, had power to determine whether this land was or was not a homestead, and its judgment that it was not such became a finality." Clearly, this expression of the court states a correct principle of law. In that case, the county court, in ordering the sale of the land, determined the question of its own jurisdiction, its jurisdiction to order the sale of the land. It became a finality and was not subject to col-

lateral attack. The judgment roll, which included the petition of the administrator and the waiver of the widow, disclosed no extra-jurisdictional fact upon which to predicate an action to set aside the decree. The probate courts of this state are courts of limited, exclusive jurisdiction, and their judgments are entitled to the same force and effect as are the judgments of courts of superior jurisdiction. This rule is so firmly established in this state that we deem it unnecessary to consider the question further. •

The effect of the rule announced in Fuller v. Holderman, supra, and other cases relied upon by the plaintiff, is that the decree of a probate court establishing the existence of a jurisdictional fact is not subject to attack in a collateral proceeding. However, where the judgment roll affirmatively discloses facts not necessary to a full determination of the cause, and the decree does not purport to adjudicate such facts, it may not be presumed that such facts were in issue. The adjudication of the homestead question by the county court in the A. O. Hembree estate was not necessary to a full determination of the case. The existence of the homestead right was not dependent upon the action of the county court. Hardridge v. Hardridge, supra. In the cases relied upon by the plaintiff the determination of the jurisdictional question was necessary to support the decrees in question, and that question was whether or not there existed a homestead interest in the lands in question.

Proposition No. 2 is as follows:

"The court erred in finding and holding that the homestead rights of minor plaintiffs in error were lost through abandonment of the homestead by their mother."

The trial court found that the act of the widow in conveying a part of the surface and a portion of the minerals, together with her direction to the adult children to move the minor children from the premises, constituted an abandonment of the premises as a homestead.

The record shows no evidence of a sale by the widow of any part of the surface of the lands covered by plaintiff's lease. In view of our conclusion herein, it is not necessary to determine whether the sale by the widow and children of a portion of the tract which constituted the original homestead worked an abandonment of the homestead.

It can hardly be seriously urged that the mother's requesting the older children to move the minors elsewhere after the mother's death could constitute an abandonment of the homestead by the mother and that the effect thereof was to establish the homestead of the minors elsewhere than on the lands in question.

Under the laws of this state the home of minor children, in the absence of legal guardianship control and of court decree, is the home of the parents.

"The domicile of a minor is that of the father if living. On the death of the father, the domicile follows that of its mother during her widowhood." 9 R. C. L. pp. 547, 548.

And domicile means a place where a person lives, or has his home, or residence. (9 R. C. L. 538.) The mother was legal guardian of the children, but she had no power as mother or as guardian to control the affairs of the children after her own death. This is so elemental that we need not discuss it further. The evidence showed, and the court so found, that Maudie Hembree died upon the land in question, and that the children were removed therefrom after her death. When Maudie Hembree died, her authority as parent and as guardian ceased. No one remained with authority to waive the homestead right for the minors, the right which the law gives them to continue to occupy all the premises as a homestead. In Rockwood v. St. John's Estate, 10 Okla. 476, 62 P. 277. may be found the following statement by the court concerning a minor's right to waive or abandon his statutory homestead right:

"The right to the homestead by the minor children is not dependent upon the actual 'possession and occupancy' of the land by them. They can neither waive nor abandon their right to the homestead. Their right depends upon their minority, which cannot be forfeited or taken away."

We say, however, that this statement does not mean that the legal guardian may not dispose of the homestead right of the minor by sale of the fee under proper order of court.

It is urged that the sale by the mother of a portion of the oil and gas and other mineral rights under the land constituted a waiver of the homestead claim. The deed in question conveyed to the grantees an undivided one-eighth interest in and to all the oil, gas, coal, and other minerals in and under the premises, together with the perpetual and irrevocable right, privilege, and easement of entering upon said land and searching for and drilling wells and taking and carrying away all of said minerals, with such right of occupancy as may be necessary for such purposes, subject to the existing oil and gas lease of the plaintiff.

The one-eighth interest so conveyed, being subject to plaintiff's lease, amounted to a conveyance of one-eighth of the royalty provided for in the lease, or a 1/64 of the entire production as long as said lease remained in force, or a one-eighth of the entire oil, gas, and mineral rights after said land should be freed from the lease.

Upon the death of A. O. Hembree the lands in question descended to his wife, Maudie Hembree, and their children as tenants in common. The interests of the children were burdened with the homestead right of the mother, which included the right to occupy the whole of the premises, together with the privilege of appropriating to her own use all the accumulating royalties produced under plaintiff's lease, less any portion thereof conveyed prior to her husband's death. That she is legally entitled to assign any and all of the rents and profits arising from the land may hardly be disputed. Lusk v. Carter Oil Co., 172 Okla. 508, 53 P. (2d) 1656. And this right is independent of the fee ownership during the continuance of the homestead interest. This interest is solely and exclusively the interest of the surviving mother in this case. Such is the purpose of the homestead statute, to guarantee as effectually as possible to the surviving parent a home with all the income therefrom, where he may better provide for himself, and, in the event there are children, where he may have the better opportunity to perform his legal duty to such children by supplying them with a home and support.

However, such occupancy and use of the homestead is not enjoined upon the surviving parent. It is merely a privilege granted by statute which may be disclaimed, abandoned, or waived at the option of the parent. Lusk v. Carter Oil Co., supra; In re Gardner's Estate, supra. No other person has a vested interest in such right of occupancy and use, and none is privileged to question such disclaimer, abandonment, or waiver where the same is accomplished in good faith, and rights of third parties to the issues rents, and profits from the homestead claim have not intervened. Lusk v. Carter Oil Co., supra.

The conveyance in question does not purport to assign merely the revenues for the duration of the widow's homestead occupancy. It is a grant of a perpetual and irrevocable right to produce and carry away one-eighth of all the minerals beneath the surface of the land. Occupation and use are the privileges contemplated, and granted to the homestead occupant by section 1223, supra. The use so granted must be confined within the bounds by which the owner of a life estate is restricted. The occupant may not commit waste. It is definitely settled in this state that the sale of minerals produced under authority granted prior to the vesting of the homestead right, or life estate, does not constitute waste. But the production and sale of minerals by the homestead occupant or his licensee under authority not existing at the time the right of occupancy vests does constitute waste, and such may be enjoined by the other heirs or their assigns. 27 R. C. L. 1044. As a mere homestead occupant, Maudie Hembree could not have made a valid grant of the privilege of producing the oil and gas in the land.

Maudie Hembree, however, possessed more than a homestead interest in the land; she inherited from her husband an undivided one-third interest in the fee, and as such owner she was cotenant with the other heirs and could sell and convey her right to produce the minerals from the homestead. The mineral deed, however, conveyed no right to the grantee to demand a partition of the land so as to destroy the right of occupancy of the premises. It is stated by this court in Cuff v. Koslosky, 165 Okla. 135, 25 P. (2d) 290, as follows:

"It is settled law that oil and gas in place are minerals, and so long as they remain unsevered from the soil are a part of the realty. In this jurisdiction oil and gas, although they form a part of the corpus of the soil, the aggregate physical interest in the land, while in place are not subject to absolute ownership separate and distinct from the soil of which they form a part; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514; nor is the land divided horizontally as well as vertically for the purpose of separate ownership as in the case of some other jurisdictions. * * *"

Thus it is made clear that the grantee in an oil and gas grant cannot demand an interest in the premises inconsistent with the homestead right of occupancy any more than can the lessee in the ordinary oil and gas lease.

While it is stated in Cuff v. Koslosky, supra, that oil and gas in place are not subject to absolute ownership separate and distinct from the soil of which they form a part, it is held in the same case that such is a valuable property right and is the proper subject of sale. And such decision is supported by numerous holdings of this court. In this connection it is there stated by the court as follows:

"We conclude that a mineral grant which provides for the transfer of an interest in

and to the oil and gas and mineral rights lying in and under a certain tract of land conveying to the grantee the right to dig, explore, and extract minerals from the granted premises without limitations as to time, and which purports to convey unaccrued royalties. is an alienation of a property right, a dismemberment of ownership, a creation of a separate estate, and is such an interest in land as to come within the provision of section 703, C. O. S. 1921, under the classification of lands and tenements."

It is clear that Maudie Hembree has conveyed an interest in the land, coupled. with the perpetual right to extract the oil, gas, and other minerals and to appropriate the same, and that such conveyance was valid and binding upon her. She has granted to others, and placed beyond her recall, the right to perform acts inconsistent with her right to claim and use all the royalties. Her grantees may now produce minerals by virtue of her existing authority as cotenant to so develop the premises which right has been assigned to said grantees.

The rights conveyed are similar to the rights of the lessee in the ordinary oil and gas lease, and a cotenant may lease his undivided interest in the common real property and such lease is valid and binding upon him, but not so as to his cotenants who have not joined therein. Under such circumstances, as stated in Willis' Thornton on Oil & Gas, section 435, the lessee or assignee in such case becomes a cotenant in the mineral lease with the other co-owners, with the right to enter upon the property to explore for, mine, and market the oil and gas with the obligation to account to the cotenants for their proportion of the oil and gas recovered. See Lanyon Zinc Co. v. Freeman, 68 Kan. 691, 75 P. 995.

Therefore, Maudie Hembree's grant as cotenant was not void as being a grant by the homesteader, or life tenant of authority to commit waste. Other cotenants could not restrain operations under the grant. The authority of the grantees to operate was subject only to the rights of the plaintiff lessee to object to such operation (40 C. J. 1123), with the subsequent duty of grantees to account to the cotenants. Thus the children of A. O. Hembree and Maudie Hembree, or their assigns, were vested with an immediate right to demand a segregation of their interest in the production. One cotenant has exercised her right to operate the premises for oil and gas. Such right may not be denied the other cotenants, and must include the right to receive their proportionate share of the proceeds of the sales of the corpus of

the estate. Bailly v. Farmers State Bank, 35 S. D. 122, 150 N. W. 942.

It is true, the plaintiff in this case, as lessee, could enjoin Maudie Hembree's grantees from extracting oil and gas, but that right did not accrue to Maudie Hembree and the other heirs. If the plaintiff's lease had expired or had been abandoned, said grantees could have immediately commenced operations on the premises. While the lease is in force none but plaintiff can object. If lessee does not object, then Maudie Hembree's grantees as cotenants with the heirs of A. O. Hembree could at any time commence operations, and all cotenants, or their assigns, could then demand an accounting for all production, not only as cotenants, but as claimants analogous to remaindermen who are entitled to share in the proceeds of sale of any portion of the corpus of the property where such is sold by authority granted subsequent to the vesting of the homestead claim or life estate.

The mere fact of the execution of the mineral deed by Maudie Hembree is no indication that she intended to abandon or waive her right to occupy the premises. It is well settled in this state that abandonment is a question of intent on the part of the occupant (Russell v. Koller, 70 Okla. 258, 174 P. 560), and the burden of proving such intent is upon the party alleging it. Greenwood v. Wilkinson, 124 Okla. 300, 256 P. 46. There is no evidence of such intention disclosed by the record. The rights granted do not materially affect her right of occupancy of the premises, but the grant does materially affect her right to the use thereof. She has renounced her right to the exclusive use of the royalties accruing from the land. In 13 R. C. L. 656, wherein may be found a discussion of the effect of a permanent lease of a portion of the homestead premises, appears the following:

"Where, however. the purposes for which lands are leased. or the circumstances of the leasing, show that there is an intention to devote the part leased permanently for a purpose other than occupation as a homestead, the right of exemption does not attach to the lands thus leased."

By analogy, a sale of the perpetual mineral rights, not confined to the duration of the homestead occupancy, was a grant of an unequivocal right to devote a portion of the realty, the oil and gas in place, to purposes other than the homestead right to use all the royalty only during the. homestead occupancy, and upon the execution of said deed, Maudie Hembree opened the way for the rights of all other cotenants to immedi-

ately attach to all the minerals beneath the surface of the land.

In Lusk v. Carter Oil Co., supra, this court apparently recognized the sale of oil and gas rights by the widow as not destroying the homestead claim to all oil and gas produced. An examination of that case, and the briefs submitted therein, reveals that the parties made no contention that the conveyance had such effect.

Proposition No. 3 is as follows:

The court erred in finding and holding that the various conveyances by the widow, adult heirs, and the guardian conferred a present right of enjoyment of the rents and royalties from the homestead.

The provisions of section 1223, supra, plainly state that the right to occupy the homestead vests in the surviving parent. It does not say that the right shall vest in the surviving parent and the children. Upon the death of "both husband and wife the children may continue to occupy the whole homestead until the youngest child becomes of age." Under this provision the children's right to occupy the homestead as such could not vest until the death of the second parent. It is so held in Lusk v. Carter Oil Company, supra. The South Dakota homestead statute is in exact terms with our section 1223 with the one exception that the statute of that state omits the clause, "which shall not in any event be subject to administration proceedings." In Bailly v. Farmers State Bank, supra, a widow, with her children, was in possession of the homestead. She conveyed her inherited undivided one-third interest in the fee to the defendant bank. In an action by the children to cancel this deed it was alleged that the land at the time of the execution of the deed was the homestead of the widow and minor children. The South Dakota court held that the children, as such, did not have or acquire any interest in the homestead property belonging to the parent; that their homestead right depended upon the mother remaining in possession until her death. It was further held in that case that the grantee in the mother's deed became a tenant in common with the children and that the law of proper accounting for rents and profits as between cotenants applied.

While the vesting of the homestead right in the children is dependent upon the existence of a minor child or children, the statute in no way excludes adult children who may be occupying the premises along with the minor or minors at the time of the death of the last parent. The defendants in this case refer to Manning v. Dosher, 167 Okla. 368, 29 P. (2d) 966, as authority that adult children cannot continue to possess and occupy the homestead. In that case the second paragraph of the syllabus by the court is as follows:

"Neither a grandchild nor adult child has any right to continue to possess and occupy the homestead, under the provisions of section 1223. O. S. 1931, the provisions of that section being limited to the husband or wife and the minor children of the deceased owner of the land."

This expression would seem to exclude adult children from the homestead claim. However, in the body of the opinion we find the following statement:

"Section 1223, O. S. 1931, which provides in part as follows: * * * is not applicable. The testator left neither surviving wife nor minor child."

The unqualified statement that an adult child could not continue to possess and occupy the homestead was clearly unnecessary to complete determination of the case and to that extent purely obiter dicta, and the same is expressly overruled.

It therefore follows that the homestead right of occupancy vested in the children of A. O. Hembree and Maudie Hembree upon the death of the mother, and such interest vested in not only the minor children but also in such adult children as were occupying the premises as a home upon the mother's death. They take the homestead in the condition in which it was when the same vested in them. Lawley v. Richardson, supra. And that means the right of occupancy unaccompanied with the right to use the royalties from oil and gas as an incident to such occupancy. As stated before, this right was definitely and finally waived and destroyed by Maudie Hembree.

Counsel for minor defendants have urged the case of Bledsoe, Adm'r, et al. v. Green, 138 Okla. 15, 280 P. 301, as authority for their proposition that the homestead right vested in the children upon the death of the father.

An examination of that case reveals a state of facts wholly different in character from the facts herein involved. The case involved the foreclosure of a mortgage on the homestead. The mortgage had been executed by the father and mother. The father died leaving a wife and two minor children. The mortgagee sued to foreclose the mortgage, served the wife personally, and the administrator of the father's estate with summons.

Petition was later filed in the original cause to set aside the foreclosure sale on the ground that the homestead was not assets in the hands of the administrator, and service on him under authority of section 1198, C. O. S. 1921 (1194 O. S. 1931), relating to actions by and against administrators, was not sufficient to bring the minors under jurisdiction of the court. This court held that the judgment of foreclosure was void as against the children, on the theory that the homestead was not assets in the hands of the administrator and the service upon the administrator was of no effect. This, we affirm, is the law. The court, however, in syllabus No. 7, holds as follows:

"Where a mortgage is sought to be foreclosed on land constituting the inherited homestead of the widow and minor children of decedent and the service of summons is on the widow as administratrix and personally and not on the children, the interest of the children is not affected by a sheriff's deed to the purchaser, and, upon motion of the minor children, such a sale should be vacated by the court and the sheriff's deed canceled."

Through inadvertence, and wholly unnecessary to the proper determination of the case the court has injected the words, "land constituting the inherited homestead of the widow and minor children", indicating that the statutory homestead vested in the children on the death of the father. Manifestly, that was not the intended meaning of the words, and we again hold that it is not the law.

Counsel for the four minor defendants have urged a number of cases other than those mentioned, supra, in support of the proposition that the homestead right of the children vested at the time the right vested in the widow. Among these cases is Shawnee National Bank v. Van Zant, 84 Okla. 107, 202 P. 285, and in this case this court followed California cases holding that a surviving wife may mortgage her interest in the homestead, but the purchaser under foreclosure of such mortgage has no right to the possession of any portion of the homestead during the minority of the children.

The California case followed by this court, in expressing that rule, is Hoppe v. Hoppe, 104 Cal. 94 37 P. 894. That case bases its conclusion upon the homestead statute of California which provides that the homestead set apart after the death of one of the parents is "for the use of the surviving husband or wife and the minor children." (Calif. Code Civ. Proc. sec. 1465.) The statute is wholly unlike ours in this respect.

Such decisions do not give to our statute its clear meaning and intent. We therefore expressly overrule all former cases holding that the homestead rights of minor children under the homestead statute, section 1223, supra, vests in such children at the time such right vests in the surviving parent. See Lusk v. Carter Oil Co., supra; Bailly v. Farmers State Bank, supra.

It is urged that the sale by the guardian of minor defendants of an undivided interest in the royalty to Brandenburg was void for the reason that said sale was made in order that the funds derived therefrom might be used to pay a debt of Maudie Hembree. It is charged that the purpose of the sale appeared upon the face of the proceedings and that Brandenburg was charged with notice of the county court's want of jurisdiction. We have examined the record. The proceedings of such sale as the same appear in evidence disclose no lack of jurisdiction in the county court. The petition for the sale sets out that the indebtedness against the estate of the minors is approximately $1,300, and that a large part thereof is secured by a mortgage against their land, and that the mortgage is past due, that there is insufficient income to pay debts and for support and maintenance of the wards, and that it is necessary and to the manifest interest of the ward to sell a portion of the real estate to pay the indebtedness, the expense of administration, and for support and maintenance, and the residue, if any, to be invested in productive property. The statutory authority for the sale is plainly set out, and we can find nothing to the contrary upon the face of the proceedings, and our attention has not been called to any specific statement in the record disclosing nonjurisdictional facts. We cannot agree that said sale was void upon the face of the record.

We find no error on the part of the trial court prejudicial to the rights of the parties as to the oil and gas rights in the premises here involved. The judgment is therefore affirmed.

BAYLESS, PHELPS, and CORN, JJ., and CRAWFORD, SPECIAL J., concur. RILEY and WELCH, JJ., and CAVANESS, SPECIAL J., dissent. McNEILL, C. J., not participating. OSBORN, V. C. J., and BUSBY, J., disqualified.

RILEY, J. (dissenting). It is my view that a conveyance by a widow of a fractional interest in oil and gas mining rights to land constituting a homestead does not work a complete segregation of the mineral

interest to the land, and does not of itself establish an abandonment of the homestead right in so far as the mineral interests to the land are concerned, especially where there are minor children and the land is used and occupied as a homestead until the death of the widow.

Herein, the land was leased and dedicated to the production of oil and gas prior to the death of either spouse. The conveyance by the widow of an undivided one-eighth interest in the mineral rights was subject to the existing lease. The lease would endure, by its terms, so long as oil and gas should be produced in paying quantities. As stated in the majority opinion, in view of the existing lease this conveyance of mineral rights mathematically amounted to a right to take a 1/64 royalty interest from the production of petroleum.

While the so-called mineral deed purported to grant a right **"of entering upon the land, searching for and drilling wells and taking and carrying away all of said minerals, with right of occupancy as may be necessary for such purposes, subject to the existing oil and gas lease of the plaintiff,"** the fact is that the existing lease exclusively granted that right to the lessees, so that at most for the life of the lease the "mineral deed" simply operated as an assignment of a fractional part of the royalty.

Now under the rule stated in Lawley v. Richardson et al., 101 Okla. 40, 223 P. 156, the widow was entitled to the use of the royalties as in the case of rents and profits. If she was entitled to them, it seems logically to follow that she was entitled to assign and convey the right to take them, thus to enjoy presently in lump sum the prospective profits, and so without abandonment of the homestead character of the land or minerals remaining.

Whether or not this conveyance of that which amounted to a fractional royalty was in perpetuity, I doubt that the grantee of the royalty became a cotenant with the widow and minor children. The interests were dissimilar. Could the owners of the royalty partition and upon failure to partition in kind sell the surface and the whole of the royalty? I think not, for after all the royalty, as the significance of the word indicates, is a species of crown right—a prerogative—a right to take rents and profits. It is only in a limited sense an interest in land. The rule has not yet been established that the owner of a hundredth or thousandth or any other fractional interest in oil and gas royalty may partition and sell the whole of the royalty.

This court held, as disclosed by the majority opinion, as to the widow:

"That she is legally entitled to assign any and all of the rents and profits arising from the land may hardly be disputed. Lusk v. Carter Oil Co., 172 Okla. 508, 53 P. (2d) 656. And this right is independent of the fee ownership during the continuance of the homestead interest."

Had the land not been dedicated to the production of oil and other minerals, the surviving widow, as a mere homestead occupant, probably would have had no authority to grant the right of production and sale of minerals from the land, in that such an act would, under such circumstances, constitute waste under a homestead right, which is similar to a life estate. 27 R. C. L. 1044.

I think it sound to hold:

"That the grantee in an oil and gas grant cannot demand an interest in the premises inconsistent with the homestead right of occupancy any more than can the lessee in the ordinary oil and gas lease."

For oil and gas in place are not subject to absolute ownership, separate and distinct from the soil of which they form a part. Cuff v. Koslosky, supra.

Assuming that the "mineral deed" grants a right of entry, exploration, and extraction of minerals in future or at present, subject only to protest of the lessee, it must be the conclusion that the "mineral deed" granted no right that could not be and was not enjoyed under the lease. Thereunder the lessee had the right and exercised the right to take seven-eighths of the profits in the petroleum produced, whereas under the so-called deed this right was a 1/64. Under the lease there was the right of entry, exploration, and extraction of minerals; and under the lease the intention is evidenced to continue so to do permanently or until profitable extraction of minerals ceases. No one now contends that the mere leasing of a homestead for oil and gas purposes segregates and terminates the homestead character of the land in so far as the rents and profits arising from the minerals are concerned.

But it appears to me that if the majority opinion is to be the law of this state, it would follow that a royalty grant and eventually the conveyance of a mere oil and gas lease would operate as a segregation of

minerals and an abandonment of the homestead character of land in so far as the right to take profits from minerals is concerned.

Thus the purpose of a homestead as conceived by Constitution and statutes would be destroyed.

Such a result is manifest from the rule quoted from 13 R. C. L. 656.

"Where, however, the purpose for which lands are leased, or the circumstances of the leasing, show that there is an intention to devote the part leased permanently for a purpose other than occupation as a homestead, the right of exemption does not attach to the land thus leased."

That rule, as I conceive it, is applicable in some jurisdictions where land is leased for, say, a period of 99 years, but it is inapplicable to oil and gas mining leases or to conveyances of royalty interest in land and interests under mineral deeds, except perhaps in so far as the particular interest conveyed is concerned, for there is no expressed intention by virtue of such conveyances to abandon the right to take profit from the remaining lands. Moreover, the rule stated is limited to land "thus leased" and has never before been extended to remaining land.

This court has recently held that the sale of a portion of a homestead in fee accompanied by temporary removal from the residence remaining does not destroy the homestead right, which right is an enjoyment of all uses of remaining land.

I am not willing to hold that the mere conveyance of a fractional interest, or of a fractional mineral right, or of a lease where lands have been devoted to mineral developments, segregates the minerals as a whole, and frees the minerals remaining and the right to a profit upon them, from the beneficent homestead provisions of our Constitution and statutes.

In the case to which the note in 13 R. C. L. 656, is appended, to wit, Green v. Richardson, 122 La. 361, it was held in accord with the majority rule that the leasing of a part of the homestead does not constitute an abandonment even as to that part leased. And in Sibley v. Lawrence, 46 Iowa, 563, the court held that a lease of a coal right under agricultural lands for a term of 99 years did not constitute an abandonment, and that the reversion in the coal lands was not subject to a sale or execution. The reason for the rule seems to be that the homestead is provided, not only for residence purposes, but for all purposes of general

utility. The object being to secure the homesteaders, not only a house, but the means of a livelihood.

In the cited case it was contended that "the mining privilege granted" amounts to a segregation or "in legal contemplation constitutes a severance of the coal from the surface and creates a separate and independent estate," but the court said: "This argument proves too much." The lease grants for the period of 99 years the privilege of mining coal, but suppose such privilege was never exercised, does the mere lease or grant, in legal contemplation, sever the coal from the residue of the estate, or must there not be a severance in fact of the coal, and when it is so severed, does not the coal become the property of the lessee, etc?

The court further reasoned:

"Suppose there had been growing on this land timber suitable for railroad ties, and the plaintiff had granted the privilege to another to cut and remove from the premises all such timber for a certain compensation for each tie: would such a contract amount to a severance of the timber while standing and the creation of an independent estate? We think not. Until there was a severance in fact, such timber so standing constituted a part and parcel of the homestead to the same extent as if the contract had never been made. So with this coal until it was in fact severed. At which time only it ceased to be a part of the homestead and the plaintiff at the same instant of time ceased to own the same and it became the property of the lessee."

So it is with the oil and the right to take profit from the oil. This widow, under our decisions, was entitled to use of all the royalty as rents and profits. She might well convey for cash consideration that right pending the homestead privilege. She might well grant that right in perpetuity as to her own interest, but under the reasoning of the Iowa court, that not conveyed remained and the whole homestead was preserved until an actual severance occurred, and the homestead right was diminished only to the extent of the corpus removed.

As in the case of Parker v. Riley, 63 L. Ed. 847, nothing contained in the mineral grant "suggests that the rights of the heirs, as among themselves, were to be altered or affected."

There was no expressed intention to segregate or abandon the homestead right to the remaining minerals. These remaining minerals constituted an undivided part of the whole homestead. They were not capable of separation until reduced to posses-

sion. The grant by the widow was simply a profit a prendre pro tanto. As such, there was no disturbance of the homestead right possessed by the surviving spouse.

In Atlas Supply Co. v. Blake, 51 Okla. 778, 152 P. 601, it was held that a tenant in common may have a homestead, and is entitled to a homestead exemption, in lands held in common. Consequently it is my firm conviction that in the case at bar there was no segregation of mineral interests in the lands remaining and constituting the homestead and no abandonment of homestead rights was established by the act of the surviving spouse whereby she conveyed a fractional mineral right to the land.