## Tomlinson, et al. v. Humpich, et al.

(Decided March 23, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1.  Life Estate—Holder May Operate Clay Pits Open Before Estate is Created.—The holder of the life estate upon lands may operate, even to the exhaustion of the mineral therein, clay pits upon the land which had been opened and operated by the previous holder of the fee-simple estate, and which were in operation at the time of the creation of the life estate, though he could not open and operate such pits if they had not been previously opened.

2.  Life Estates—Facts Held not to Show Abandonment of Operation of Clay Pits by Grantor of Estate.—Proof that clay pits had been opened and operated upon land by the husband of the former owner of the fee-simple title, but that, after the husband's death, the owner, who was then an aged woman, did not operate them during the rest of her lifetime, held not to show a permanent abandonment by the owner of the fee of the operation of the pits, which would prevent their operation after her death by her son to whom she devised the land for life.

3.  Life Estates—Remaindermen cannot Interfere with Operation of Clay Pitts by Lessee of Life Tenant Who Could Operate Them.— If the life tenant had a right to operate clay pits upon the land which had been opened by the previous owner of the fee, the remaindermen were not injured by the operation of such pits by a lessee from the life tenant, and therefore are not entitled to a cancellation of the life's tenant's lease.

DELOZIER MOXLEY for appellants.

ROWAN HARDIN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Mrs. Martha Augustus died in 1895, the owner of a tract of land in the edge of the city of Louisville. She left a will wherein she devised her real estate to her five children.

To her son Presley she devised for life the dwelling house and about three acres of land, with remainder to her other four children. The remaining part of her land was partitioned after her death as directed and one-fifth thereof allotted to Presley for life.

In her will she provided that the part allotted to Presley should be conveyed to and held by a trust company in trust for him and for his benefit during his natural life, and the trust company as trustee was given

power to rent any and all of the land so conveyed for any length of time and invest whatever money might be turned over to it and to pay over to Presley the net proceeds of such land and money, and no more.

The trustee did not actually take possession of the land or rent the same out, but by acquiescence Presley continued to hold possession of and operate the land. Some years prior to the death of the testatrix and during the life of her husband there was opened by the husband on the wife's tract of land, including that part which was allotted to Presley, sand or clay pits, and the husband for some years operated these sand or clay pits and sold sand from them to many persons and engaged in the business as a commercial enterprise. The husband died some years before the death of his wife, who was the title holder; and thereafter during her life the sand pits were not operated and their operation appears to have been for the time being abandoned.

But after the death of his mother, Presley being in possession of the property so devised to him for life, again, in about 1899, opened up these sand and clay pits and operated the same for his own benefit. This operation on his part was acquiesced in by his brothers and sisters for twelve or thirteen years, and in March, 1912, Presley for a valuable consideration made a lease to the appellee, Humpich, for a term of forty-nine years, giving to the lessee the right to operate these sand and clay pits.

The lessee Humpich continued to operate under the terms of this lease for five years or longer before this suit was brought by appellants, two of the other children of Martha Augustus, and who are two out of the four remaindermen to whom Presley's property is devised in remainder. They, as such remaindermen, seek in this action an injunction against Humpich, that the lease be declared invalid, and that they have an accounting as against Humpich for the sand and clay removed by him from this property.

In the lease executed by Presley his trustee did not join, and to this action both Presley and his trustee are made parties defendant. They each filed answers and cross-petitions against Humpich asking in substance the same relief sought by the plaintiffs.

On submission the trial court dismissed the plaintiff's petition, dismissed the cross-petition of Presley, but on the cross-petition of the trustee cancelled the lease made by Presley to Humpich.

This is an appeal by the two plaintiffs, the remaindermen, and Humpich and his wife are the only appellees, neither Presley nor his trustee being parties to the appeal.

Manifestly, therefore, the only things for which the remaindermen can recover and the only things which would entitle them to an injunction are such as have resulted or would result in an injury to their estate, that is, to their estate in remainder. The trust was created solely for the benefit of Presley, and whether the lease given by him to the Humpichs was valid or invalid does not give to the remaindermen a cause of action unless they have been injured in their estate. If, therefore, Presley had a right to operate the sand pits during the existence of his life estate, and during the existence of that estate another operated them for his benefit, then the remaindermen have not been injured in their remainder estate and they have no cause for complaint.

The holder of the life estate in the lands upon which there has not been opened wells or mines during the life of the previous holder of the fee simple estate, may not open or sink such mines or wells or pits, and if he does so he commits waste as against the remainder estate, and may be restrained. But if during the life of the previous holder there has been opened by him or under his authority wells or mines or pits and the same have been operated during his lifetime and are in operation at the time of the creation of the particular estate, then the holder of the life estate may continue their operation during such holding even to the exhaustion of the mineral substance found therein, unless there be in the instrument creating the life estate some restraint upon or restriction of such right. Daniels v. Charles, 172 Ky. 238, and authorities there cited.

In this case the sand and clay pits had been opened and operated by Mrs. Augustus for commercial purposes during her lifetime, and upon the very land which was thereafter allotted to Presley, and there can be no doubt of his right during the existence of his life estate to continue that operation under the rule above stated.

But there is an exception to this rule, and that is that when the mining operation has been permanently abandoned by the holder of the previous estate in his lifetime, then no such right accrues to the holder of the life estate upon his death. The claim here is that there was a permanent abandonment by Mrs. Augustus during her

lifetime of the operation of these sand pits, and the facts on that question are that her husband died some years before she did and he, acting for her, had opened these sand pits and operated them for her. At the time of his death she was quite an aged woman and not being able herself to continue their operation, and for reasons of her own she saw proper for the time being to abandon this operation and rented out her little place for other purposes. This was not a permanent abandonment, but was only necessitated and brought about by reason of her situation after the death of her husband, and when she made her will, in the absence of any restriction, it may be presumed she contemplated that her son Presley, to whom she gave the life estate, might earn his living also by the operation of these pits.

The fact that the holders of the remainder estate acquiesced about seventeen or eighteen years in the operation of these sand pits on Presley's land, both by him and by his lessee, is very convincing that the holders of the remainder believed as Presley believed that as those pits had been opened and operated during his mother's life, he also had a right to continue that operation.

If, therefore, Presley was within his rights in operating these sand pits and had a right to operate them, even to exhaustion, during his lifetime, it is clear the remaindermen could not have interfered with that operation and are entitled to no accounting from the lessee of Presley, even though the operations by Presley's lessee may have been under a void contract. For if the lessee is accountable to anyone for his actions under this lease, he is accountable alone to Presley, the only one who had a right to operate the sand pits during his life.

Judgment affirmed.