**Hoyal B. MOORE et al., Appellants,**

**v.**

**Troy C. VINES et al., Appellees.**

**No. 17515.**

Court of Civil Appeals of Texas, Dallas.

Dec. 11, 1970.

Rehearing Denied Dec. 31, 1970.

Fred S. Harless, Harless, Fagg & Cravens, Dallas, for appellants.

Leo J. Hoffman, Strasburger, Price, Kelton, Martin & Unis, Dallas, Gordon R. Wynne, Wynne & Wynne, Wills Point, for appellees.

DIXON, Chief Justice.

This suit calls for the construction of a joint will executed by Ruby Neely Vines and husband Troy C. Vines.

The will in its entirety is as follows:

"State of Texas ⎫
County of Van Zandt ⎭

Know all men by these presents that we, Troy Vines and wife Ruby Vines, residents of Van Zandt County, Texas, above the age of 21 and of sound mind, do hereby make this our last will, revoking all other wills, if any, at any time heretofore made by us or either of us.

Upon the death of either of us, it is our will that all the property owned by both of us, both real and personal and both separate and community go to the survivor to be used by such survivor during his or her life time.

The survivor is hereby appointed independent executor of this will and is directed to act without bond.

Upon the death of both of us, the separate real estate owned by Troy Vines shall go to L. R. Vines for his life time, and the separate real estate owned by Ruby Vines shall go to her heirs.

In case L. R. Vines shall die before Troy Vines does then Troy Vines Real estate at the deth (*sic*) of the survivor shall go to Harold David Moore, grandson of Ruby Vines. The said Harold David Moore to have said land at death of L. R. Vines.

Witness our hands at Grand Saline, Texas this the 13th day of August 1959 in the presence of the undersigned witnesses who are signing this will at our request.

| /s/ Troy C. Vines | /s/ Ruby N. Vines |
|---|---|
| Troy Vines | Ruby Vines |
| /s/ Nancy S. Mayne | /s/ H. E. Henderson |
| Witness | Witness" |

Appellants Hoyal B. Moore and Harold David Moore, son and grandson respectively of Ruby Vines by a previous marriage brought the suit as plaintiffs. Also brought into the suit as involuntary plaintiffs were Vida Aleen Moore Handley, daughter of Ruby Moore by the previous marriage, and Vida's husband, Charles Jerry Handley, joined pro forma.

The defendants in the trial court were appellees Troy C. Vines, individually and as independent executor of the estate of his deceased wife, Ruby Vines, Pan American Petroleum Corporation, Service Pipe Line Company, Loyd Russell Vines, Harlie L. Clark, Elise M. Young and Stanton L. Young—the last four defendants being as-

signees through assignments originally made by Troy Vines.

In their petition appellants allege that the will of Ruby and Troy C. Vines is not only a joint will but that it is also a mutual, contractual will which is binding on Troy C. Vines and which he cannot now revoke. Further, they allege that Troy has elected to take under the will so is now bound by its terms. They also seek recovery from Pan American Petroleum Corporation and Service Pipe Line Company for royalties and bonuses paid to Troy C. Vines since the death of Ruby Vines. Their contention is that the payment of royalties to Troy C. Vines since the death of Ruby was wrongful since he had only a life estate in the properties, and the royalties, etc. are part of the corpus of the estate.

The controversy involves the rights of the parties as to two tracts of land, which we shall hereinafter designate as Tract "A" and Tract "B".

In the prayer to their pleading appellants specifically asked for judgment as follows:

"1. Declaring that the only interest of TROY C. VINES, Defendant, in Tracts A and B is a life estate;

"2. Declaring that HOYAL B. MOORE, Plaintiff, is the owner of a one-half (½) undivided remainder interest in Tract A (the other one-half undivided remainder interest being owned by VIDA ALEEN MOORE HANDLEY Involuntary Plaintiff);

"3. Declaring that HAROLD DAVID MOORE, Plaintiff, is the owner of the entire remainder interest in Tract B, possession of said Tract being subject only to TROY C. VINES' life estate and a contingent life estate interest in LOYD RUSSELL VINES, Defendants;

"4. Declaring that ½ the royalties from oil, gas and other minerals produced from Tract A is the property of HOYAL B. MOORE, Plaintiff, as owner of ½ the remainder;

"5. Declaring that all oil, gas and other minerals produced from Tract B is the property of HAROLD DAVID MOORE, Plaintiff;

"6. Declaring that an accounting between Plaintiffs HOYAL B. MOORE and HAROLD DAVID MOORE and the Defendants be had; and

"7. That Plaintiffs HOYAL B. MOORE and HAROLD DAVID MOORE recover judgment of and from the Defendants for the amounts found to be due under said accounting by Defendants to Plaintiffs, interest thereon, for costs of suit, and for such other and further relief, special and general, in law and in equity, to which they may be justly entitled."

Appellee Troy C. Vines filed an answer consisting of a general denial, specific denials, and allegations that the making of a joint will "was simply an afterthought of the attorney who prepared the will and neither of the parties had any intention * * * in any way or manner to dispose of or bind the property of the other party."

Vida Aleen Moore Handley, the involuntary plaintiff, joined by her husband Charles Jerry Handley, filed a written response in which she vigorously attacks the plaintiffs and their cause of action and defends her stepfather, Troy C. Vines, and his claims. Vida Aleen Moore Handley apparently was not present at the trial—at least she did not testify.

Pursuant to Article 3716 (Dead Man's Statute), Vernon's Ann.Civ.St., Troy Vines was not permitted to testify as to transactions with Ruby Vines during her lifetime.

The court rendered a judgment denying recovery for appellants except that Hoyal B. Moore was adjudged to be the owner of undivided one-half interest in the remainder in Tract "A", subject however to the life estate of Troy C. Vines.

The trial court filed findings of fact and conclusions of law among which were the following:

## Findings

"7. On the 18th day of October, 1959, Ruby Vines died in Van Zandt County, Texas, testate and her last will and testament was admitted to probate on November 23, 1959, and Troy Vines was appointed and qualified as independent executor of her estate as shown by Probate Proceedings 6804 in the County Court of Van Zandt County, Texas. The estate of Ruby Vines, the subject of such probate proceedings, has remained open, and Troy Vines has served continuously as independent executor thereof, up to the time of the trial of this cause.

* * *

"9. That the last will and testament of Ruby Vines was a joint will with Troy Vines, but was not a mutual or reciprocal will executed pursuant to any kind of contract or character of agreement, but, wholly to the contrary, was the separate will and separate disposition of each of the parties thereto with no intent to dispose of the estate of the other. Such will did not constitute a comprehensive plan to dispose of the entire estate of the parties.

"10. I find no facts in the evidence that would remotely indicate a prior agreement between Troy Vines and Ruby Vines, or agreement in or in connection with the will, as to a mutual or contractual disposition of their separate or community estates. I further find that under the testimony of plaintiffs' witness, the scrivener of the will, that there was no contract or prior agreement between Troy Vines and Ruby Vines as to a joint and mutual disposition of their properties.

"11. I further find that in probating the will and taking interests thereunder, Troy Vines was not put to any election and his acts did not amount to an election, specially because Ruby Vines did not purport in the will to disclose of any property or interest of Troy Vines.

* * *

"15. On March 26, 1951, Troy C. and Ruby Vines executed and delivered to R. I. Boyd an oil, gas and mineral lease covering all of Tracts 'A' and 'B', and on June 5, 1951, the lease was assigned to Cities Service Oil Company.

"16. That Cities Service Oil Company each and every year for the full ten-year primary term of the oil, gas and mineral lease duly and timely paid the delay rentals, both before and after the death of Ruby Vines, and thereby maintained said lease in force as to all of Tracts 'A' and 'B' from March 26, 1951, to March 26, 1961.

"17. That at the time of the death of Ruby Vines in 1959, the said Cities Service Oil Company lease was in full force and effect as to all of Tracts 'A' and 'B'.

"18. That on April 3, 1961, within one week from expiration of the previous lease, Troy C. Vines, as a single man, executed and delivered to Pan American Petroleum Corporation an oil, gas and mineral lease covering Tract 'B' described in plaintiffs' petition, and Pan American Petroleum Corporation paid Troy C. Vines a valuable consideration for such lease at the rate of $75.00 per acre. At the time of the delivery of said lease to, and the payment of said consideration by, Pan American Petroleum Corporation, it had no notice or knowledge, either actual or constructive, of the probate or existence of Troy and Ruby Vines joint will, or of any claim by the plaintiffs to any interest in Tract 'B' described in plaintiffs' petition.

"19. That on June 1, 1961, Troy C. Vines, individually and as independent executor, the plaintiff, Hoyal B. Moore, and the involuntary plaintiff, Vida Ai-

leen Handley, joined therein by her husband, Charles Jerry Handley, for a valuable consideration, executed and delivered an oil, gas and mineral lease to Pan American Petroleum Corporation covering Tract 'A' described in plaintiffs' petition.

"20. That on April 25, 1962, Troy C. Vines executed and delivered to Pan American Petroleum Corporation a ratification and rental division order covering Tract 'A'. Said corporation, on September 14, 1962, executed and then recorded its declaration of unitization covering its Parker 'B' gas unit, which unit included and pooled Tract 'B' described in plaintiffs' petition.

"21. That there has been no well drilled for the production of oil or gas upon Tract 'B' described in plaintiffs' petition, and there has been no production of oil or gas from such tract. The plaintiff, Harold David Moore, is not a party to any pooling agreement with respect to the production of gas from the Parker Gas Unit 'B' which includes said Tract 'B'.

"22. That on July 12, 1963, in accordance with its lease, Pan American Petroleum Corporation executed and then recorded its declaration of unitization for its Vines gas unit, which included Tract 'A' described in plaintiffs' petition. Pursuant to and by virtue of the lease from Troy Vines, Hoyal Moore and Aileen Handley dated June 1, 1961, the Pan American Petroleum Corporation entered upon Tract 'A' and drilled a well as a gas well serving the Vines Unit.

\* \* \*

"30. That on January 11, 1969, Vida Aileen Handley, joined by her husband, Charles Handley, by instrument recorded in Volume 724, page 361, of the Deed Records of Van Zandt County, Texas, made, executed and delivered a deed, bill of sale and quit-claim to Troy C. Vines

covering Tract 'A' described in plaintiffs' petition."

Conclusions

"1. That the joint will of Ruby and Troy Vines was neither mutual nor reciprocal, nor executed pursuant to a contract or agreement, or to effect a planned comprehensive disposition of the entire estates of said parties; and the claims and causes of action asserted by the plaintiffs under said will as a contractual will are without merit.

"2. That the elements necessary to constitute or invoke the doctrine of election as against Troy Vines are not present and such doctrine is not applicable, and the contentions made by the plaintiffs relative thereto are without merit.

"3. That at the time of the death of Ruby Vines and the vesting of the life estate of Troy Vines in Tract 'A' described in plaintiffs' petition and when he came into possession thereof, there was a valid and subsisting oil, gas and mineral lease in effect covering such tract and when it expired, it was immediately replaced by the parties at interest by the lease in favor of Pan American Petroleum Corporation and production of gas was had therefrom and the open mine doctrine is therefore applicable and the claims and demands of plaintiffs with respect to \* \* \* oil, gas or other minerals are without merit.

"4. That the Pan American Petroleum Corporation, the Service Pipe Line Company, Harlie L. Clark, Elise M. Young and Stanton Young were each innocent purchasers for value without notice as to the respective interests owned and held by each of them in Tract 'B' described in plaintiffs' petition, \* \* \*.

"5. That Hoyal Moore, one of the plaintiffs, as a remainderman having joined in the execution of the lease covering Tract 'A' in plaintiffs' petition,

with Troy Vines, the life tenant, is estopped to claim royalty proceeds attributable to Tract 'A', and his claims are without merit, and Harold David Moore, one of the plaintiffs, is estopped to claim production of oil, gas or other minerals or the proceeds thereof attributable to Tract 'B', * * *. In addition, the said Harold David Moore, not being a party to any pooling or other agreement with respect to the Parker Gas Unit 'B', is not entitled to participate in any production therefrom or the proceeds thereof."

## EVIDENCE

Many of the material facts are undisputed. Ruby and Troy C. Vines were twice married to each other. They were first married in 1931. During their first marriage they acquired both Tract "A" and Tract "B" as community property.

On July 22, 1953 their first marriage was dissolved by divorce. In the property settlement Tract "A" was awarded to Ruby as her separate property and Tract "B" was awarded to Troy as his separate property. During this marriage several gas, oil and mineral leases were executed by Ruby and Troy but no production was realized.

In the month of August, 1958 Ruby and Troy again married each other.

Ruby died October 18, 1959.

The will was admitted to probate and Troy qualified as independent executor.

Among the oil and gas leases executed by Ruby and Troy was a ten year lease they executed March 26, 1951 to R. I. Boyd covering all of Tracts "A" and "B". This lease was assigned to Cities Service Oil Company. Delay rentals were paid every year during the ten year period, whereby the lease was kept in force for the full ten year term from March 26, 1951 until it expired March 26, 1961.

On April 3, 1961 Troy C. Vines executed an oil, gas and mineral lease to Pan American Petroleum Corporation covering Tract "B".

On June 1, 1961 Troy C. Vines individually and as independent executor, and Hoyal B. Moore and the involuntary plaintiff Vida Aleen Moore Handley, joined by her husband, executed an oil, gas and mineral lease to Pan American Petroleum Corporation covering Tract "A".

Troy admitted that he had received approximately $65,000 in royalty payments from Tract "A", of which he has spent all but the sum of $2,150.

The will which is the subject of this controversy was prepared by Mr. Enoch Fletcher, an elderly, respected attorney who has practiced for many years, having his office in Grand Saline, Texas. Mr. Fletcher had lost the sight of one eye and his vision was defective in his other eye. Notwithstanding this defect in his eyesight, Mr. Fletcher did his own typing, though he frequently found it necessary to erase portions or interline the documents he prepared.

Mr. Fletcher testified at considerable length at the trial. We here summarize his testimony. Ruby and Troy came together to his office to have their wills drawn. Each told him separately what each wanted in his and in her will: the use of their property by the survivor as long as he or she lived. Mr. Fletcher then asked each of them what disposition was to be made of their property after the death of the survivor. Ruby said she wanted her property, her separate real estate, to go to her heirs after the death of the survivor. Troy Vines said he wanted his property to go to his brother Russell Vines and if Russell died before he did, he wanted his property to go to his stepgrandson, Harold David Moore.

Mr. Fletcher further testified that neither Ruby nor Troy requested that he prepare a joint will. That was his idea, not theirs. He decided to prepare a joint will in order to save himself time and work and

to save them money. Neither of them said anything that would have required him to prepare a joint will or a mutual, contractual will. It was his idea to prepare a joint will because it was easier for him and simpler for his clients. They did not tell him they had discussed what they wanted done after the death of the survivor. They gave separate instructions. Troy said that Russell (his brother) might die before he did and he believed he would just leave his property to Ruby's grandson. But Troy didn't say that until Mr. Fletcher asked him.

## OPINION

Appellants present fifteen points of error, but we believe these points may be grouped for discussion as follows:

1. Appellants assert that the will is a joint, mutual, contractual will under which Troy Vines takes only a life estate in the two tracts of land, consequently he has no rights to the royalties as the royalties are a part of the corpus of the estate. And said royalties have been wrongfully paid to Troy by appellees Pan American Petroleum Corporation and Service Pipe Line Company.

2. The "open mine" doctrine is not applicable to justify payment of royalties to Troy individually on Tract "A" since the death of Ruby, for the properties were not producing oil or gas when Troy's life estate began upon the death of Ruby, and never did produce under leases signed by Ruby. The only production came, and the only royalties were paid, under leases executed by Troy after Ruby's death and after Troy's life tenancy began on Tract "A".

3. Troy has elected to take under the will, which gave him only a life estate and does not entitle him to receive the royalties, they being a part of the corpus.

4. It was error to allow Troy to testify that the estate of Ruby was still open, such testimony being an opinion by a lay witness upon a mixed question of law and fact.

5. It was error to admit in evidence a deed (Defendants' Exhibit No. 8) from the involuntary plaintiff Vida Aleen Moore to Troy Vines except for the limited purpose of showing a conveyance to Troy Vines of all her interest, including royalties paid in the past or to be paid in the future from production on oil, gas and mineral leases.

We are of the opinion that appellants' fifteen points of error should be overruled.

■ There is ample evidence, considering the record as a whole and especially the testimony of Mr. Enoch Fletcher, to support the court's findings and conclusions that the will, though joint, was not a mutual, contractual will; that there was no contract between Ruby and Troy as to how the separate property of each should go upon their deaths; and no contract that Troy should have only a life estate in Tract "B". Since Troy retained title to Tract "B" as his separate estate he had a right to execute the lease of April 3, 1961 and to keep as his own the royalties paid under said lease. Kastrin v. Janke, 432 S.W.2d 539, 540 (Tex.Civ.App., El Paso 1968, writ ref'd n. r. e.); Nesbett v. Nesbett, 422 S.W. 2d 746 (Tex.Civ.App., Dallas 1967, writ dism'd); Tips v. Yancey, 422 S.W.2d 759 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.); Dufner et al v. Haynen et al, 263 S.W. 2d 662, 664 (Tex.Civ.App., San Antonio 1953, writ ref'd n. r. e.); City of Corpus Christi v. Coleman, 262 S.W.2d 790, 794–795 (Tex.Civ.App., San Antonio 1953, no writ); Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165 (1946). Since there was sufficient evidence to support the court's finding, that finding is binding on us. See Mitchell's, Inc. v. Nelms, 454 S.W.2d 809 (Tex.Civ.App., Dallas 1970, writ ref'd n. r. e.) and cases there cited.

■ We are also of the opinion that the evidence amply supports the court's findings and conclusions that neither Ruby nor Troy sought to dispose of any of the other's property, therefore Troy was not put to an election. Graser v. Graser, 147 Tex. 404,

215 S.W.2d 867, 870 (1948); City of Corpus Christi v. Coleman, 262 S.W.2d 790, 795 (Tex.Civ.App., San Antonio 1953, no writ).

■ Regardless of the application of the "open mine" doctrine as to Tract "A", Troy would be entitled to keep one-half of the royalties from production on the tract. This is so because Vida Aleen Handley joined by her husband, Charles Handley, by a deed dated October 3, 1963 sold, assigned and conveyed to Troy all her interest in the royalties already paid or which may be paid in the future from production on Tract "A".

■ However we are convinced that under the "open mine" doctrine Troy is entitled to all the royalties resulting from production on Tract "A" during the life tenancy. Our Supreme Court has held that the execution of a lease by the fee owner before the inception of the life estate is sufficient to invoke the "open mine" doctrine though production under said lease may not have begun until after the inception of the life estate. In such a factual situation the royalties produced during the life tenancy do not become a part of the corpus of the estate to be held for the remaindermen, but belong to the life tenant. Youngman v. Shular, 281 S.W.2d 373 (Tex. Civ.App., San Antonio 1955, affirmed by Supreme Court, 155 Tex. 437, 288 S.W.2d 495—1956).

It is true that the factual situation in *Youngman* differs from the factual situation in this particular: here the production did not come under the terms of the original lease signed in 1951 by the testatrix and her husband. The production came pursuant to the terms of a lease signed by the husband and the remaindermen in 1961 after the inception of the husband's life tenancy.

But the execution in 1951 of a ten year oil, gas and mineral lease by the testatrix and her husband, Troy Vines, manifested the intention of the testatrix to devote the property to mineral development. Pursuant to the holding in *Youngman* we hold that in this case the mine was "opened" within the meaning of the law when the testatrix and her husband executed the ten year lease in 1951, it was an "open mine" in August of 1959 when the testatrix executed her will giving her husband a life estate in Tract "A", and its status was still that of an "open mine" when the testatrix died in 1959, and the life estate of her husband, Troy Vines, had its inception—this though there had been no production of minerals under the terms of the lease.

We do not regard the expiration in 1961 of the original lease as an abandonment or closing of the "open mine". To the contrary we regard the execution by Troy and the two remandermen about two months after the expiration of the original lease as a continuation and extension of the "open mine" status of the property, which status had already been established under the original lease of 1951. Therefore Troy is entitled to the royalty payments from production during his life tenancy under the new lease. Clyde v. Hamilton, 414 S.W.2d 434, 439–440 (Tex.Sup.1967); Butler v. Butler, 2 S.W.2d 63 (Ark.1928); Tomlinson v. Humpich, 198 Ky. 474, 248 S.W. 1016 (Ky.1923); Mitchell v. Mitchell, 157 Tex. 346, 303 S.W.2d 352 (1957); Guittard, "Rights of a Life Tenant In Production and Use of Oil and Gas", 4 Texas Bar Journal 265 (1941); Woodward, "The Open Mine Doctrine in Oil and Gas Cases", 35 Texas L.Rev. 538 (1957).

In Clyde v. Hamilton, above cited, our Supreme Court makes this statement:

"When the settlor of a trust or a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as the settlor or testator could."

In the record before us the testatrix (who had opened the mine by executing the lease

of 1951) gave no directions as to the impounding or expenditure of the proceeds from the mine, therefore the law presumes an intent that Troy, the life tenant, could expend or dispose of the proceeds of the mine as the testatrix could have. And this presumption carries over and applies to the new lease executed by Troy and the two remaindermen.

There is also ample evidence to support the trial court's findings and conclusions that Pan American Petroleum Corporation and Service Pipe Line Company are innocent purchasers so far as the remaindermen are concerned with reference to production on Tract "A". Reserve Petroleum Co. v. Hutcheson, 254 S.W.2d 802 (Tex. Civ.App., Amarillo 1952, no writ); Williams v. Slaughter, 42 S.W. 327 (Tex.Civ. App., 1897, no writ); 49 Tex.Jur.2d 395. There is no question that the lease executed June 1, 1961 by Troy is valid. Both remaindermen, Hoyal B. Moore and Vida Aleen Moore Handley, also signed a lease to Pan American Petroleum Corporation.

 Be that as it may, there is another reason why Pan American cannot be held liable for making the royalty payments as it did. All checks were made payable to Troy both individually and as independent executor. Even if it be said that Troy had no right individually to appropriate the royalty payments to his own use it was proper for him to receive them in his capacity of independent executor. Sec. 409, Texas Probate Code; 40 Am.Jur., Payment, Sec. 26; Atlantic Ins. Co. v. Fulfs, 417 S.W.2d 302, 305 (Tex.Civ.App., Fort Worth 1967, writ ref'd n. r. e.); Youngman v. Shular, 281 S.W.2d 373, 375 (Tex. Civ.App., San Antonio 1955, affirmed 155 Tex. 437, 288 S.W.2d 495); Ramirez v. Flag Oil Corp. of Delaware, 266 S.W.2d 270 (Tex.Civ.App., San Antonio 1954, no writ); Cline v. Henry, 239 S.W.2d 205 (Tex.Civ.App., Dallas 1951, writ ref'd n. r. e.); 42 Tex.Jur.2d 72.

■ We see no reversible error in the court's admitting the testimony of Troy that he had "continued to act" as independent executor, and so far as he knew, the estate was still open. Under the present Probate Code, Sections 151 and 152, V.A.T.S., two methods are provided for closing an independent administration of an estate. The first of these is by the filing by the independent executor himself of an affidavit complying with the terms of Section 151. The other is by the filing by any distributee of an application to close the estate pursuant to Section 152. Bradford v. Bradford, 377 S.W.2d 747 (Tex.Civ.App., Texarkana 1964, writ ref'd n. r. e.); Carter v. Brady, 400 S.W.2d 620 (Tex.Civ.App., San Antonio 1966, no writ). Appellants do not claim that either of the above methods has been followed in this case. As to the rule before passage of the Probate Code see Parks v. Knox, 61 Tex.Civ.App. 493, 130 S.W. 203 (1910, no writ).

Appellants' points of error are overruled.

The judgment of the trial court is affirmed.